# FILE

IN CLERKS OFFICE

SUPREME COURT, STATE OF WASHINGTON

DATE MAR 27 2014

for CHIEF JUSTICE



This opinion was filed for record
at 8:00 am on Mar. 27 2014

Ronald R. Carpenter
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Respondent, | ) | No. 88140-5 |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| PAMELA D. DESKINS, | ) | |
| | ) | Filed MAR 2 7 2014 |
| Petitioner. | ) | |

OWENS, J. -- Pamela Deskins challenges the sentence she received after a jury found her guilty of a misdemeanor violation of the cruelty to animals statute, chapter 16.52 RCW. She asks us to determine (1) whether the trial court abused its discretion when it prohibited her from owning or living with animals as a condition of probation, (2) whether the trial court abused its discretion when it ordered her to forfeit any remaining animals to the Stevens County Sheriff's Office after giving her seven days to find them new homes, and (3) whether the trial court violated her due process rights by proceeding to sentencing 22 minutes after the verdict and imposing restitution to reimburse the county for animal care. We hold that the forfeiture challenge is moot, and we affirm the Court of Appeals on the remaining issues.

FACTS

Deskins lived on a property in rural Stevens County where she kept many dogs, as well as several horses, llamas, donkeys, and other animals. She kept roughly 40 dogs at any given time—often confining them together in one large fenced area. Deskins sometimes kept feral dogs on the property. Michael Benson also lived on the property in a trailer separate from the house, and he had a few animals of his own, including one dog.

Several neighbors contacted police after they witnessed a series of violent incidents involving Deskins's dogs. On May 6, 2008, some of Deskins's dogs jumped over the fence and attacked a neighbor's dog named Winnie. The details of the attack are gruesome. Winnie suffered major injuries and bites that nearly killed her, but she survived after a local veterinarian treated her at a cost of approximately $1,400.

On September 17, 2008, several neighbors witnessed the pack of dogs on Deskins's property attack and kill one of their own. The neighbors gathered on the roadway near Deskins's property to film the attack and report it to police. While they were there, Deskins arrived home. The neighbors saw Deskins place the dead dog in her pickup truck. Deskins became upset when she saw the crowd of neighbors and threatened to shoot them if they did not leave.

On September 29 and October 1, neighbors witnessed and filmed two similar attacks. Each time the pack of dogs mauled and killed a smaller dog in the pack. The

neighbors would try to stop the attacks by yelling at the dogs, but they did not enter the pen themselves, fearing for their safety. On October 2, one neighbor saw Deskins drive down the road with a black bag in the back of her truck. About one mile down the road, she saw Deskins's truck stopped in the roadway. Then she saw Deskins reenter her truck and drive away. The neighbor noticed that the black bag was missing. She pulled over and found a dead dog in a black bag at the side of the road where Deskins had stopped. Police retrieved the carcass, and a veterinarian determined that the dog had been dead for several days. It had a broken femur and deep bite wounds on its neck consistent with a dog attack.

Police obtained a warrant and seized 37 dogs that lived on Deskins's property. The dogs were sent to SpokAnimal, a local animal rescue. SpokAnimal had to euthanize several of the dogs because they had health issues or were too aggressive. SpokAnimal held the dogs until December 24, 2008, when the Stevens County Sheriff's Office agreed to return 15 dogs in exchange for Deskins releasing the others to be adopted or euthanized. The sheriff's office explained that it returned some dogs to mitigate the costs of caring for the animals.

Deskins was charged with four misdemeanors—one count of animal cruelty in the second degree, one count of transporting or confining animals in an unsafe manner, one count of harassment, and one count of tampering with physical evidence. Deskins was tried in district court in February 2010. Her trial lasted three days.

Witnesses testified to the facts stated above and also testified that they saw Deskins's

dogs attack her donkeys and even kill one of her llamas. A SpokAnimal employee

testified that it is unsafe to confine a pack of dogs in an undivided enclosure because

the larger, aggressive dogs will attack smaller, subordinate ones. The jury convicted

Deskins on all charges.

Sentencing began after a 22-minute recess that followed the verdict. Deskins

requested a one-week continuance to prepare for sentencing, but the court denied the

motion. The trial judge cited the limited schedules of the court and, at a later hearing

to reconsider sentencing, explained:

> [G]oing immediately to sentencing -- may not have been your
> expectation, it is certainly -- allowable and here where I've worked with
> the case since November 6[th], 2008 I was very familiar with all of the
> allegations, all of the arguments of counsel -- on both sides and -- did not
> feel the least pressure or hesitancy in going forward to sentencing.

3 Transcript of Proceedings (TR) at 675. The State was prepared for sentencing. The

State presented videos and victims testified about the traumatic events they witnessed.

They talked about the trauma of witnessing the gruesome attacks and also about how

they lost their sense of security after Deskins threatened them. Winnie's owners

talked about the $1,400 in veterinarian bills they paid to treat her, and Captain

George[1] made a statement and presented documents detailing the county's costs for

---

[1] The record does not reflect Captain George's full name or organizational affiliation. But he appeared at sentencing on behalf of the State to offer evidence of the costs that Stevens County incurred.

4

caring for the seized dogs. At that point the county had paid $21,582.21 and still owed SpokAnimal $5,940.00. These documents were not filed with the court, but the judge did review them during sentencing. Defense counsel anticipated that the court would order forfeiture of her animals and asked for time to rehome them. The State requested that Benson take care of finding new homes for the animals and he agreed to do so. Deskins agreed to this option and asked that Benson be given 30 days to rehome the animals.

The court recessed for 74 minutes while the judge reviewed the documents related to sentencing. The court imposed a total of 850 days of confinement with 300 days suspended and two years of probation. It imposed several conditions on the sentence, including requiring Deskins to undergo psychological counseling, noting that it had this power under former RCW 16.52.200 (2003).[2] Then the court went on to say:

> The other conditions are: do not own, acquire or live with pets or livestock during the probationary period. Additionally, do not go to the property of or have any contact with Laurie Strong. Other, all pets, livestock, domestic or commercial, shall be forfeit to Stevens County Sheriff on 3/5/21 -- [sic].[3]

---

[2] The trial court had the power to order psychological counseling under subsection (6) of the statute under which Deskins was charged. The court erroneously cited subsection (7) for this authority—most likely referring to the 2009 version of the statute, which recodified the same provision in a new subsection. *See* LAWS OF 2009, ch. 287, § 3. This error had no effect, as both versions of the statute contained identical language.

[3] The court later clarified that only animals on the property that belonged to Deskins would be forfeited.

5

3 TR at 632 (alteration in original). The court gave Benson seven days to rehome the animals, and the court indicated that it believed Benson when he said he would do so. The court ordered Deskins to pay Winnie's owners $1,400 for her injuries and the sheriff's department $21,582.21 for the cost of caring for the animals. It noted that these figures were "substantially below -- what the actual reimbursement costs are." *Id.* at 640.

Deskins appealed to the superior court. The superior court affirmed the convictions for transporting or confining animals in an unsafe manner and animal cruelty. It reversed and remanded for new trial the harassment conviction, and it reversed and dismissed the tampering with physical evidence conviction. The superior court also ordered the trial court to clarify some conditions of the probation and the legal authority for ordering restitution for injuries to Winnie. The Court of Appeals accepted review and, in an unpublished opinion, it reversed and remanded her conviction for animal cruelty. *State v. Deskins*, noted at 170 Wn. App. 1021, 2012 WL 3861275, at *6. It upheld her conviction for confining animals in an unsafe manner. *Id.* at *5. The court rejected other challenges, including Deskins's arguments that (1) the district court lacked authority to prevent her from owning or living with animals during the probationary period, (2) the district court lacked authority to order her pets and livestock be forfeited if not rehomed after seven days, and (3) the district court violated her due process rights by proceeding to sentencing

6

after a 22-minute recess and by imposing restitution for animal care costs. *Id.* at *6-10. We granted review of these issues only. *State v. Deskins,* 176 Wn.2d 1027, 301 P.3d 1048 (2013).

## ISSUES

1. Did the trial court err when it ordered that the defendant could not own or live with animals during the probationary period?

2. Did the trial court err when it ordered that the defendant's animals that had not been rehomed seven days after sentencing would be forfeited to the State?

3. Did the trial court violate the defendant's due process rights when it proceeded to sentencing shortly after trial ended and imposed restitution to reimburse the sheriff's office for costs relating to animal care?

## ANALYSIS

### I. The Standard of Review

Sentencing conditions are reviewed for abuse of discretion. *State v. Riley,* 121 Wn.2d 22, 37, 846 P.2d 1365 (1993). Restitution orders, when authorized by statute, are also reviewed for abuse of discretion. *State v. Enstone,* 137 Wn.2d 675, 679, 974 P.2d 828 (1999). "An abuse of discretion occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons." *In re Marriage of Katare,* 175 Wn.2d 23, 35, 283 P.3d 546 (2012), *cert. denied,* 133 S. Ct. 889 (2013).

*II.    The Trial Court Did Not Abuse Its Discretion by Setting the Probation Term
        That the Defendant Could Not Live With or Own Any Animals*

The district court has the statutory authority to impose conditions of probation

under RCW 3.66.067 and .068. District courts "may place the defendant on probation

for a period of no longer than two years and prescribe the conditions thereof." Former

RCW 3.66.067 (2001). "[T]he court has continuing jurisdiction and authority to

suspend or defer the execution of all or any part of its sentence upon stated terms,

including installment payment of fines." Former RCW 3.66.068 (2001). "[A] court

may impose probationary conditions that bear a reasonable relation to the defendant's

duty to make restitution or that tend to prevent the future commission of crimes."

*State v. Williams*, 97 Wn. App. 257, 263, 983 P.2d 687 (1999) (citing *State v.

Summers*, 60 Wn.2d 702, 707, 375 P.2d 143 (1962)). Courts have a great deal of

discretion when setting probation conditions for misdemeanors and are not restricted

by the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, which applies

only to felonies. *See Harris v. Charles*, 171 Wn.2d 455, 465, 256 P.3d 328 (2011)

("In contrast [to misdemeanor sentencing], the SRA has limited felony sentencing

courts' discretion.").

Deskins argues that the trial court did not have statutory authority to prohibit

her from owning or living with animals during the probationary period. She points to

former RCW 16.52.200(3)—the sentencing section of the cruelty to animals statute—

which read:

> In addition to the penalties imposed by the court, the court shall order the forfeiture of all animals held by law enforcement or animal care and control authorities under the provisions of this chapter if any one of the animals involved dies as a result of a violation of this chapter or if the defendant has a prior conviction under this chapter. In other cases the court may enter an order requiring the owner to forfeit the animal if the court deems the animal's treatment to have been severe and likely to reoccur. If forfeiture is ordered, the owner shall be prohibited from owning or caring for any similar animals for a period of two years.

Deskins argues that because the statute does not grant the authority to prohibit living with animals during the probationary period, the court erred in her case by imposing that condition. We disagree.

Deskins's argument fails for two reasons. First, it overlooks the first subsection of the statute she cites, which says that "[t]he sentence imposed for a misdemeanor or gross misdemeanor violation of this chapter may be deferred or suspended in accordance with RCW 3.66.067 and 3.66.068, however the probationary period shall be two years." Former RCW 16.52.200(1). Deskins was sentenced for misdemeanor violations. As mentioned above, the trial court has discretion to impose conditions of probation under RCW 3.66.067 and .068 that tend to prevent future crimes. Here, the trial court used its discretion and found that letting Deskins own or live with animals could result in future crimes. Her illegal animal keeping practices harmed not only her own dogs and those in the neighborhood but also the livestock that lived on the property. Thus, the trial court had reason to extend the prohibition to owning livestock as well as pets.

9

Second, as the Court of Appeals correctly noted, Deskins "confuse[s] what a trial court *must* do with what it *may* do." *Deskins*, 2012 WL 3861275, at *7 (emphasis added). The portion of former RCW 16.52.200(3) that deals with probation sets a floor for what a trial court must do when it orders forfeiture—it does not set the ceiling for the entire sentence. It ensures that trial courts order a prohibition on ownership in certain cases but does not prevent them from ordering it in others. A trial court sentencing for misdemeanor violations of the cruelty to animals statute may use its discretion to set terms of probation under RCW 3.66.067 and .068, and by its own terms former RCW 16.52.200(3) applies only "[i]n addition to the penalties imposed by the court."

The record indicates that the court imposed the probation term barring Deskins from owning or living with animals as part of its discretionary authority independent from former RCW 16.52.200. It expressly stated that under former RCW 16.52.200, Deskins must undergo psychological counseling. 3 TR at 632. Then it imposed the probation conditions as "other conditions" of the sentence without citing the cruelty to animals statute. *Id.* This was a proper exercise of judicial discretion in misdemeanor sentencing to impose conditions in addition to the minimum called for by the statute. We affirm the Court of Appeals on this issue.

III.   *The Forfeiture Issue Is Moot*

Deskins also challenges the court's order that seven days after the sentence, any of her remaining animals would be forfeited to the State. At the time of the verdict, the sheriff's office had returned 15 dogs to mitigate the costs of keeping them and it never seized her livestock, which were also subject to the ultimate sentence. Again, Deskins cites former RCW 16.52.200(3) and argues that the statute only allows forfeiture of animals held by law enforcement. We do not reach this issue because it is moot.

An issue is moot if it is not possible for this court to provide effective relief. *Klickitat County Citizens Against Imported Waste v. Klickitat County*, 122 Wn.2d 619, 631, 860 P.2d 390, 866 P.2d 1256 (1993). Mootness is a jurisdictional concern and may be raised at any time. *Citizens for Financially Responsible Gov't v. City of Spokane*, 99 Wn.2d 339, 350, 662 P.2d 845 (1983). "When an appeal is moot, it should be dismissed." *Klickitat County*, 122 Wn.2d at 631.

The forfeiture challenge is moot for two reasons. First, the court's order regarding possible forfeiture was related to the two-year probation on living with or owning animals. That probation is now expired, and our decision cannot provide Deskins with any effective relief. Second, the record does not indicate that any animals were ever forfeited. Deskins and Benson were given the opportunity to rehome the animals in order to comply with the terms of probation before any

11

forfeiture occurred. Without evidence of actual forfeiture in this case we are further limited in our ability to provide relief. The issue is moot and we decline to reach its merits.

IV.    *The Trial Court Did Not Violate Deskins's Due Process Rights by Ordering Restitution*

The trial court did not violate Deskins's due process rights when it proceeded to sentencing 22 minutes after the trial and ordered her to pay restitution to the victims of her crime and to those who cared for her animals while they were seized. Deskins argues that she was not given sufficient notice and opportunity to refute the restitution numbers and that the information used to calculate the restitution amount was not reliable. Her arguments are unpersuasive.

*A. Deskins Had Sufficient Notice and Opportunity To Be Heard*

The authority to impose restitution is statutory. *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008). Under RCW 9A.20.030(1), a trial court may impose restitution to repay victims of crime for their loss. Under former RCW 16.52.200(4), a trial court may impose restitution to repay "reasonable costs incurred pursuant to this chapter by law enforcement agencies, animal care and control agencies, or authorized private or public entities involved with the care of the animals." "Reasonable costs include expenses of the investigation, and the animal's care, euthanization, or adoption." *Id.*

These statutes gave the defendant sufficient notice that restitution was a possibility and Deskins knew that the restitution could be substantial. She knew that Winnie's owners suffered approximately $1,400 in damages for her injuries and that the sheriff's office cared for her dogs from early October until December 24 when she released many of them to the county.[4] Many of these dogs needed medical care, several were pregnant and gave birth, several were euthanized, and others were eventually rehomed through an adoption process. Deskins had notice that the costs of treating and caring for approximately 40 dogs for almost three months would be substantial.

Defense counsel initially asked for the court to decide the restitution issues at a later date, stating that he "[didn't] think that those numbers can just be signed off on." 3 TR at 619. Then Captain George spoke on behalf of the county and presented a bill totaling the costs that the sheriff's office incurred. After that point, Deskins did not object to the restitution amount. Nor did she object to the restitution amount at a hearing to amend her sentence that occurred in April 2010. From indictment to verdict, Deskins's trial lasted nearly one and a half years, and at all times she knew that the State could seek restitution. She had the opportunity to be heard at sentencing but failed to respond to statements and bills from the sheriff's office.

---

[4] At least two dogs were released around Thanksgiving—one elderly dog that SpokAnimal thought would do best in a home environment and one that belonged to Benson. But most of the seized dogs remained under State control until December 24.

Additionally, the trial court did not err by denying Deskins's motion to continue sentencing. The decision whether to grant a continuance is "largely within the discretion of the trial court." *State v. Eller*, 84 Wn.2d 90, 95, 524 P.2d 242 (1974). That decision will "be disturbed only upon a showing that the accused has been prejudiced and/or that the result of the trial would likely have been different had the continuance not been denied." *Id.* Deskins has made no such showing that the amount of restitution would have been any different if she had been given a continuance. Nor does she cite any authority for the proposition that a district court may not proceed to sentencing shortly after a verdict is read. We hold that her due process rights were not violated by the sentencing in this case.

### B. The Trial Court Did Not Abuse Its Discretion in Fixing the Amount of Restitution

Deskins also claims that the restitution amounts were based on insufficient evidence. When disputed, the facts supporting a restitution award must be proved by a preponderance of the evidence. *State v. Kinneman*, 155 Wn.2d 272, 285, 119 P.3d 350 (2005). "While the claimed loss 'need not be established with specific accuracy,' it must be supported by 'substantial credible evidence.'" *Griffith*, 164 Wn.2d at 965 (quoting *State v. Fleming*, 75 Wn. App. 270, 274-75, 877 P.2d 243 (1994)). "'Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.'" *Id.* (internal quotation marks omitted) (quoting *State v. Hughes*, 154

Wn.2d 118, 154, 110 P.3d 192 (2005), *overruled on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). Courts may rely on a broad range of evidence—including hearsay—because the rules of evidence do not apply to sentencing hearings. ER 1101(c)(3).

Both parties cite to *State v. Kisor*, 68 Wn. App. 610, 844 P.2d 1038 (1993), arguing that it supports their position. The trial court in *Kisor* ordered $17,380 in restitution after the defendant killed a police dog. *Id.* at 613-14. At sentencing, the trial court considered only affidavits, and the State produced an itemized affidavit of the costs of replacing the dog. *Id.* The affidavit included estimates for room and board during the dog's training. *Id.* at 614 n.2. The Court of Appeals reversed the restitution order, saying that the affidavit contained hearsay statements, was "nothing more than a rough estimate," and gave "no indication of where [the State] obtained the figures." *Id.* at 620.

This case is distinguishable from *Kisor*, and we hold that the restitution was supported by sufficient evidence in this case. Captain George presented bills detailing the costs of caring for the animals. It is immaterial that the court relied on hearsay because the rules of evidence do not apply at sentencing. ER 1101(c)(3). The statements and documents were not speculation or conjecture but rather actual amounts billed to the sheriff's office by SpokAnimal. The court considered the evidence for 74 minutes and found it sufficiently credible to impose restitution. While

15

$21,582.81 may seem like a large amount of money, the trial court noted that it was "substantially below" the actual cost of caring for nearly 40 dogs for nearly three months. 3 TR at 640. The trial court did not abuse its discretion in awarding the amount.

Deskins argues that the State "fails to prove the required causal relationship between crime and expense merely by presenting a summary or list of expenditures." Suppl. Br. of Pet'r at 19. Not true. Former RCW 16.52.200(4) makes it clear that the State may seek restitution for reasonable costs such as expenses of the investigation, animal care, euthanization, and adoption. This statute shows the causal link between animal mistreatment and subsequent care by the State. Because Deskins confined her animals in an unsafe and illegal manner, the State had to seize them and give them proper care. The State did not need to provide any causal evidence except that it seized the animals in connection to an unlawful confinement of animals charge and that it incurred costs as a result. We affirm the Court of Appeals.

## CONCLUSION

We hold that the forfeiture challenge is moot, and we affirm the Court of Appeals on the remaining issues before us. The trial court had the authority to set, as a term of probation, the condition that Deskins may not own or live with any animals. And the trial court did not violate Deskins's due process rights when it proceeded to

sentencing shortly after the trial ended and imposed restitution to compensate for the

cost of caring for the animals.

_____
Owens, J.

WE CONCUR:

Madsen, C.J.
_____

_____
Johnson

_____

_____
Stephens, J.

_____

González, J.
_____

_____

No. 88140-5

GORDON McCLOUD, J. (concurring and dissenting)—I agree with the majority that the trial court acted within its discretion when it prohibited Pamela Deskins from owning or living with animals as a condition of probation. I also agree with the majority's decision not to reach the merits of Deskins's forfeiture challenge; the record does not establish that any animals were actually forfeit. But the majority's holding that the restitution hearing in the trial court complied with due process clause protections conflicts with our precedent. I therefore respectfully dissent as to that holding.

ANALYSIS

A. *The evidence was insufficient to support the court's order granting $21,582.21 in restitution to the Stevens County Sheriff's Office*

"Evidence presented at restitution hearings . . . must meet due process requirements, such as providing the defendant with an opportunity to refute the evidence presented, and being reasonably reliable." *State v. Kisor*, 68 Wn. App.

610, 620, 844 P.2d 1038 (1993) (citing *State v. Pollard*, 66 Wn. App. 779, 784-85, 834 P.2d 51 (1992)). "While the claimed loss 'need not be established with specific accuracy,' it must be supported by 'substantial credible evidence.'" *State v. Griffith*, 164 Wn.2d 960, 965, 195 P.3d 506 (2008) (quoting *State v. Fleming*, 75 Wn. App. 270, 274-75, 877 P.2d 243 (1994)). Where, as here, the evidence consists solely of hearsay statements, the degree of corroboration required by the due process clause is not proof of the truth of the hearsay statements "'beyond a reasonable doubt'" but rather proof that gives the defendant a sufficient basis for rebuttal. *Kisor*, 68 Wn. App. at 620 (quoting *State v. S.S.*, 67 Wn. App. 800, 807-08, 840 P.2d 891 (1992)).

As the majority notes, in *Kisor* the Court of Appeals reversed the restitution order and remanded for a new restitution hearing because the trial court had relied on a single affidavit containing hearsay evidence of "'a rough estimate'" of the cost attributable to the defendant's conduct, without itemization or corroboration. Majority at 15 (quoting *Kisor*, 68 Wn. App. at 620). This court denied review. *State v. Kisor*, 121 Wn.2d 1023, 854 P.2d 1084 (1993).

*Kisor* cannot be meaningfully distinguished from the present case. In this case, to support its request for restitution to the Stevens County Sheriff's Office (Sheriff's Office), the State offered only an unsworn statement by "Captain George"

estimating the costs incurred by the Sheriff's Office.[1] 3 Transcript (TR) at 625.

Contrary to the majority's assertion, this statement did not contain "bills detailing

the costs of caring for the animals." Majority at 15. It did not have any "bills" at

all.[2] Rather, the transcript shows that after the court twice declined to continue the

sentencing hearing, the prosecutor stated that he had "just been handed a statement

by -- captain with regard to a more exact figure with regard . . . to what is owed

Spok[A]nimal, Judge." 3 TR at 625. Captain George then stated, but not under oath,

"There's a bill that's still outstanding to Spok[A]nimal for $5,940.00, Your Honor.

And -- the costs of the sheriff's office prior to that for caring for those animals was

$21,582.21." *Id.* In the entire record, this is the *only evidence* supporting the award

of $21,582.21 to the Sheriff's Office.

---

[1] Aside from this statement, Captain George did not say anything during the restitution hearing. He was never sworn in and never testified in that proceeding. 3 TR at 592-627.

[2] The Court of Appeals misstated the facts in a similar way. *State v. Deskins*, noted at 170 Wn. App. 1021, 2012 WL 3861275, at *10. Its opinion asserts that "[t]he restitution order was based on testimony and documentary evidence," *id.*, neither of which is true with respect to the $21,582 amount challenged in this appeal. The record contains no "documentary evidence" of the costs incurred by the Sheriff's Office, and as Deskins correctly pointed out in her briefs to this court, Captain George's unsworn statement was not "testimony." *See* 3 TR at 612-13 ("THE COURT: Do you have the restitution bills that you're asking for? [PROSECUTOR]: I don't have the bills Judge . . . . I don't have all of those figures for you at the moment but . . . I think she should be held responsible in every way . . . .").

If Deskins's case can be distinguished from *Kisor*, it is because the evidence supporting restitution presented in *Kisor* provided a more "sufficient basis for rebuttal" than did the evidence supporting restitution in Deskins's case. *Kisor*, 68 Wn. App. at 620. In *Kisor*, the costs claimed by the State were at least itemized and supported by a sworn statement. *Id.* at 614. In this case, Captain George's assertion was unsworn and stated only in a conclusory, not an itemized, fashion that "the costs of the sheriff's office [were] $21,582.21." 3 TR at 625. This did not provide Deskins any meaningful ability to contest the State's claim. *Id.* Accordingly, I would reverse the $21,582.21 award of restitution to the Sheriff's Office as unsupported by substantial credible evidence, giving Deskins a sufficient basis for rebuttal.

B.      *The trial court also violated due process clause protections by denying Deskins's motion for a continuance to prepare for the restitution hearing*

Due process clause protections also require that a defendant be given notice and an opportunity to be heard. *State v. Rogers*, 127 Wn.2d 270, 275, 898 P.2d 294 (1995). Whether the denial of a continuance violates due process clause protections depends on the circumstances of the particular case.[3] When this court has addressed constitutional challenges to the denial of a continuance, it has generally weighed the

---

[3] *State v. Downing*, 151 Wn.2d 265, 275, 87 P.3d 1169 (2004) (citing *State v. Eller*, 84 Wn.2d 90, 95, 524 P.2d 242 (1974)).

defendant's diligence and reason for requesting the continuance against the trial court's reasons for denying the continuance.[4]

In this case, the balance favored a continuance. Deskins sought a continuance so that she could determine the basis for, and counter, the State's bare assertion that it spent nearly $22,000 keeping the dogs. Her inability to meaningfully contest this assertion at the sentencing hearing cannot be attributed to her lack of diligence. Rather, it is attributable to the fact that Deskins was not afforded adequate notice of the enormous amount the Sheriff's Office would claim in restitution.

The majority concludes that Deskins had adequate notice of the restitution amount because "[f]rom indictment to verdict, Deskins's trial lasted nearly one and a half years, and at all times she knew that the State could seek restitution." Majority at 13. This reasoning is unresponsive to Deskins's arguments. The district court docket does not indicate—and the State does not claim—that the prosecution ever filed any notice of the restitution amount sought. There is no evidence anywhere in the record that Deskins was notified before the sentencing hearing began that the Sheriff's Office would request nearly $22,000 in restitution.

---

[4] *See Eller*, 84 Wn.2d at 95-96, 98; *State v. Hartwig*, 36 Wn.2d 598, 599-601, 219 P.2d 564 (1950).

In spite of this lack of notice, the trial court denied Deskins's motion for a continuance simply because, in the court's words, "[t]his Court was scheduled to be done today." 3 TR at 592. This violated due process protections.

The majority contends that Deskins bears the burden of proving that the restitution amount would have been lower if the trial court had granted a continuance. Majority at 13. It is true that a trial court's decision to deny a continuance will "be disturbed only upon a showing that the accused has been prejudiced and/or that the result of the trial would likely have been different had the continuance not been denied." *State v. Eller*, 84 Wn.2d 90, 95, 524 P.2d 242 (1974) (citing *State v. Edwards*, 68 Wn.2d 246, 412 P.2d 747 (1966)). But Deskins has met that requirement—she was prejudiced because she was unable to respond adequately to the unsworn, summary assertion that she had caused the Sheriff's Office to spend nearly $22,000 on her dogs. *State v. Hartwig*, 36 Wn.2d 598, 599-601, 219 P.2d 564 (1950) (abuse of discretion to deny continuance needed for full investigation of the facts); *State v. Oughton*, 26 Wn. App. 74, 79-80, 612 P.2d 812 (1980) (defendant entitled to a continuance needed to prepare rebuttal to State's late-disclosed evidence). Deskins is not required to show, in addition to that prejudice, that the result of the restitution hearing would necessarily have been different. *Hartwig*, 36 Wn.2d at 599-601; *Oughton*, 26 Wn. App. at 79-80.

CONCLUSION

I concur in the majority's decision to affirm the portion of the Court of Appeals decision that addresses the trial court's prohibition order. I also concur in its decision not to reach the merits of Deskins's forfeiture challenge. I dissent, however, from its treatment of the trial court's restitution hearing and order. I would reverse and remand for resentencing on the single remaining misdemeanor conviction.[5]

---

[5] It has been a long time since the 60 day sentence, fine, restitution, and forfeiture orders were imposed. Neither party has argued that the restitution challenge is moot, however.

Gordon McCloud, J.

Wiggins, J.

Fairhurst, J.