IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | No. 80892-3-I |
| Respondent, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| STEVEN BENJAMIN KENNEDY, | |
| Appellant. | |

SMITH, J. — Steven Kennedy appeals a restitution order awarding $7,526.89 to the Department of Social and Health Services (DSHS) for amounts paid for medical care for Louis Johnson after Kennedy shot Johnson in the face. Because Kennedy fails to establish any abuse of discretion in the trial court's order, we affirm.

FACTS

Around 7:30 a.m. on December 19, 2017, Patricia Kaiser and her boyfriend Louis Earl Johnson Jr. drove her 10-year-old son and 3-year-old daughter to Steven Kennedy's apartment so that Kennedy, her ex-boyfriend and the father of her daughter, could watch the children while she worked. As Kaiser was assisting the children, Kennedy became angry because she forgot her son's coat and called her a "bitch." As Johnson got out of the passenger side of the car, saying to Kaiser, "'Baby, let's go,'" Kennedy shoved Kaiser, handed back her daughter and went around to the passenger side of the car. As Kaiser helped

the children get back into the car, Kennedy confronted Johnson, who was standing next to the open front passenger door. Kaiser's son, C.W., saw Kennedy approach Johnson and tell him to "mind his own business." As C.W. watched, Kennedy pulled out a gun and shot Johnson as he was getting back in the car. Kaiser heard the gunshot and saw Johnson fall to the ground. When she saw that Kennedy had shot Johnson in the face, Kaiser thought he was dead and feared for her life and the children's lives. C.W. called his grandmother, who later described the boy as "hysterical," and told her that Kennedy had just shot Johnson. Kennedy called 911, first telling the dispatcher that he had "'committed a murder,'" and then, upon recognizing that Johnson was still alive, told the dispatcher that Johnson was "'one lucky son-of-a-bitch.'"

At Harborview Medical Center, health care providers discovered that the bullet had entered the left side of Johnson's face and exited from the right side, breaking his upper and lower jaws and his palate. In addition to performing a tracheotomy and multiple surgeries, doctors wired shut his jaw and kept him heavily sedated in the intensive care unit. When police contacted him on January 8, 2018, Johnson was finally alert and conscious but unable to speak, a condition his doctors expected to last for another six weeks. Johnson provided a written statement indicating that he witnessed Kennedy arguing with Kaiser and pushing and/or hitting her, that he got out of the car and told Kaiser to get the children so they could just leave, and that he was getting back into the car when he heard, "'You need to mind your own business,'" and "'then everything went

2

black.'"  Johnson reported his belief that Kennedy was jealous and that Kennedy intended to kill him.

The State charged Kennedy with first degree assault with a firearm enhancement.  Kennedy pleaded guilty to second degree assault with a firearm under North Carolina v. Alford, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); see also State v. Newton, 87 Wn.2d 363, 552 P.2d 682 (1976).  In his plea agreement, Kennedy agreed to pay restitution under RCW 9.94A.753 in an amount to be determined.  For the sentencing hearing, Johnson submitted a victim impact statement indicating that he is disabled as a result of the shooting and experiencing ongoing mental health symptoms and ongoing procedures.

On November 4, 2019, Hollie Nuanes, a restitution investigator with the King County Prosecutor's Victim Assistance Unit, sent a memorandum to Kennedy's attorney requesting agreement for restitution consisting of $432.31 as identified by Johnson for his glasses and $7,526.89 as identified by DSHS for medical claims it paid for Johnson's health care.  Nuanes attached an e-mail exchange with Tamra Derrick of the DSHS Office of Financial Recovery showing that (1) Derrick sent Nuanes a ledger showing $7,526.89 in charges and stating that "[t]here were other charges, but not that were paid through Medicaid," (2) Nuanes responded with a request to "verify all listed items on [the] ledger stem from and are related to injury that occurred on 12/19/2017," and (3) Derrick answered, "Yes."  Nuanes also attached two receipts provided by Johnson for eyeglasses for $209.00 on April 18, 2016, and $223.31 on April 7, 2016.  Kennedy did not agree to the requested restitution.

3

At a hearing on November 19, 2019, the trial court considered the State's restitution request. Kennedy objected, arguing that the documentation provided was insufficient to meet the State's burden of proof or satisfy due process.[1] Relying on State v. Hahn, 100 Wn. App. 391, 996 P.2d 1125, review granted and case dismissed, 141 Wn.2d 1025 (2000), Kennedy argued that the State failed to meet its burden "to prove the causal relationship between the . . . crime and the medical records and the restitution amount sought." The State pointed out that Derrick confirmed that the charges were related to the crime. After pausing the hearing to review Hahn, the trial court determined that the State met its burden and Hahn could be distinguished

> because in Hahn, there was absolutely nothing that, except for circumstantial evidence that would cause the Court to speculate as to whether or not the medical bills there were causally connected. Here we have more than that. I have an email from the Department of Social and Health Services, as well as the person who is collecting the information. That does make the causal connection that these listed items are from the injury that occurred on 12/19/17.

As for the glasses, the trial court found that the State had not met its burden because the receipt for eyeglasses was dated 2016, but there was no indication in the probable cause certification that Johnson was wearing glasses at the time the crime was committed.

The trial court entered an order setting restitution at $7,526.89 to be paid into the court registry for DSHS.

Kennedy appeals the restitution order.

---

[1] Kennedy waived his presence at the hearing but was represented by counsel.

ANALYSIS

Kennedy argues that the trial court exceeded its authority and violated his right to due process by imposing restitution for DSHS expenditures when the State failed to prove a causal connection to the crime.[2]  The State contends that the trial court did not abuse its discretion in determining the reliability of the State's evidence.  We agree with the State.

We review a trial court's order of restitution for abuse of discretion.  State v. Tobin, 161 Wn.2d 517, 523, 166 P.3d 1167 (2007).  The plain language of the restitution statute, RCW 9.94A.753, demonstrates the legislature's intent to grant broad discretion to the trial court in awarding restitution and discourages an "overly technical construction that would permit the defendant to escape from just punishment."  Tobin, 161 Wn.2d at 524.

When the evidence supporting a restitution request is disputed, the State must show a reasonable basis for estimating the loss by a preponderance of the evidence.  State v. Deskins, 180 Wn.2d 68, 82-83, 322 P.3d 780 (2014).  The trial court "may rely on a broad range of evidence—including hearsay—because the rules of evidence do not apply," but may not rely on speculation or conjecture.  Deskins, 180 Wn.2d at 82-83 (citing ER 1101(c)(3)).

Relying on State v. Dennis, 101 Wn. App. 223, 227, 6 P.3d 1173 (2000), and State v. Bunner, 86 Wn. App. 158, 160, 936 P.2d 419 (1997), Kennedy

---

[2] Kennedy filed a statement of additional grounds for review identifying as a ground for review "[t]he failure of the hospital to connect the hospital bills to the act committed by Steven Kennedy."  As it appears this is essentially the same issue raised by counsel, we do not analyze it separately.

contends that the State failed to produce sufficient evidence to show a causal connection between the December 17, 2019, assault and the charges identified by DSHS. In Dennis, this court affirmed a restitution order based on the amount paid by the city's worker's compensation unit to a hospital for providing treatment to one police officer victim on the date of the charged assault and reversed the restitution order as to a second police officer victim because a similar record did not specify the date of treatment. Dennis, 101 Wn. App. at 228. In Bunner, the State presented only "a DSHS medical recovery report listing medical services charged and amounts the State had paid," and the trial court "relied upon the inference that DSHS's Office of Provider Services would not have paid the medical bills if they were not related to Bunner's crimes." Bunner, 86 Wn. App. at 159-60. On appeal, the State conceded that the DSHS report did not show a causal relationship to the crime and this court reversed the restitution order as based on insufficient evidence to connect the costs incurred with the crime. Bunner, 86 Wn. App. at 159, 162.

Contrary to the circumstances in Dennis and Bunner, the trial court here relied on the combination of the ledger and Derrick's e-mail confirmation that the charges were related to the crime, rather than speculation or inference. Accordingly, we are not persuaded that Dennis and Bunner dictate a different result.

Moreover, we reject Kennedy's claim that the trial court violated his right to due process by relying on the e-mails exchanged by Nuanes and Derrick. Due process requires providing the defendant an opportunity to refute the evidence

presented in support of a restitution request and that the evidence is reliable. State v. Pollard, 66 Wn. App. 779, 784-85, 834 P.2d 51 (1992); see also State v. Hotrum, 120 Wn. App. 681, 684, 87 P.3d 766 (2004) (due process satisfied when defendant was present and had opportunity to present evidence at restitution hearing).

At the hearing, Kennedy argued that the "single email" with a "one word response from the Office of Financial Services" (1) did not show "who Ms. Derrick even would be" or why "she would have any knowledge of [whether] the items listed on the ledger are related to the date in question"; (2) lacked corroboration; and (3) was hearsay. Kennedy also argued that the defense had no burden to investigate the reliability of Derrick's e-mail or obtain more information, as the State bore the burden of producing sufficient evidence to support a restitution award. Here, Kennedy argues that the e-mail is not reliable because it "was not even signed under penalty of perjury," does not "even carry with it the formality of a full sentence such that this Court can be certain Derrick was responding to the actual question posed," and he had "no opportunity to rebut it."

Our review of the record establishes that the trial court heard and considered Kennedy's objections to the e-mails, but disagreed as to their weight and persuasiveness, finding instead "that the emails are reliable." The trial court did not abuse its discretion or violate Kennedy's due process rights in making that determination.

Affirmed.

_____, J.

WE CONCUR:

_____, C.J.          _____, J.