# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 55153-5-II |
| Respondent, | (Consolidated with 55626-0-II) |
| v. | |
| LAWRENCE CLARK SMITH, | ORDER GRANTING MOTION FOR RECONSIDERATION AND ORDER AMENDING UNPUBLISHED OPINION |
| Appellant. | |

Appellant, Lawrence C. Smith, filed a motion for reconsideration of this court's unpublished opinion filed on August 9, 2022. After review of the motion, answer, and the record, it is hereby

**ORDERED** that the motion for reconsideration is hereby granted, and the unpublished opinion previously filed on August 9, 2022, is hereby amended as follows:

Page 9, the last paragraph of section I. A. NECESSITY JURY INSTRUCTION shall be deleted. And the following paragraph shall be inserted in its place:

Here, we are convinced beyond a reasonable doubt that the failure to give a necessity instruction did not contribute to the verdict because the overwhelming evidence established that Smith did not simply pull to the side of the road to avoid Bergstrom's braking, but rather accelerated and attempted to pass Bergstrom on the shoulder of a highway on-ramp. A necessity defense requires proving by a preponderance of the evidence that no reasonable legal alternative exists to the defendant's actions. Even if the jury believed Smith's testimony that he attempted to pass Bergstrom to get away from him, a reasonable jury could not find that there was no reasonable legal alternative to this action because Smith could have slowed down or pulled to the side of the road and slowed down in order to create additional space between his car and Bergstrom's car until they got on to I-205. Based on the overwhelming evidence, including Smith's own admission, that Smith attempted to pass Bergstrom, no reasonable jury would have found that Smith met his burden to prove necessity. Accordingly, the failure to give the necessity instruction did not contribute to the verdict and any error was harmless.

No. 55153-5
(Consol. with 55626-0)

Pages 10-11, the second, third, and fourth paragraphs of section I. B. DURESS JURY INSTRUCTION shall be deleted. And the following paragraph shall be inserted in their place:

Like the failure to give the necessity defense, we are convinced beyond a reasonable doubt that the failure to give the duress instruction was harmless. Duress requires the defendant to prove that he would not have participated in the crime except for the duress involved. Here, even if the jury believed that Smith reasonably believed he needed to take action to avoid the threat created by Bergstrom's braking, Smith's participation in the crime—accelerating and attempting to pass Bergstrom—was not necessitated by the duress involved. As noted above, Smith could have responded to the threat by slowing down or pulling over, he did not have to respond to whatever threat was posed by Bergstrom's braking by accelerating and attempting to pass Bergstrom. In other words, a reasonable jury would not find, even by a preponderance of the evidence, that Smith would not have participated in the crime, except for the duress involved, because it was his decision to respond to Bergstrom's braking with accelerating and attempting to pass Bergstrom. Therefore, we are convinced beyond a reasonable doubt that the failure to give a duress instruction did not contribute to the verdict. Accordingly, any error in failure to give the duress instruction was harmless.

**IT IS SO ORDERED.**

**PANEL**: Jj. GLASGOW, LEE, PRICE

PRICE, J.

We concur:

GLASGOW, CJ.

LEE, J.

2

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>LAWRENCE CLARK SMITH,<br><br>Appellant. | No. 55153-5-II<br>(Consolidated with 55626-0-II)<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Lawrence C. Smith appeals his conviction for vehicular assault, arguing that the trial court denied his right to present a defense by refusing to instruct the jury on duress and necessity. Smith also appeals his legal financial obligations (LFOs), arguing the trial court erred by imposing restitution and community custody supervision fees.

Any error in the jury instructions was harmless. The amount of restitution was not supported by sufficient evidence, and the State concedes that the community custody supervision fees should be stricken. Therefore, we affirm Smith's convictions, reverse the imposition of restitution to Anthem PPO and community custody supervision fees, and remand for further proceedings consistent with this opinion.

## FACTS

On May 7, 2019, the State charged Smith and Robert Bergstrom with vehicular assault for a vehicular accident that injured Isom Clemons. The case proceeded to a joint jury trial with Smith and Bergstrom as co-defendants.

No. 55153-5
(Consol. with 55626-0)

Trooper Chad Prentice of the Washington State Patrol (WSP) testified that he was dispatched to an incident on September 14, 2018. Dispatch advised that there had been a collision involving a motorcycle on northbound Interstate 205 (I-205).

Clemons testified that he was riding his motorcycle through Vancouver, Washington. As Clemons was riding down I-205, he was hit by a blue car from the right side. Clemons sustained extensive injuries to his back, hip, and leg.

Becky Bellamy witnessed the accident when she was driving home from work. Bellamy testified that she was on the on-ramp to I-205 when she looked in her rear view mirror and saw a truck following a sedan "really close." 2 Verbatim Report of Proceedings (VRP) at 395. When Bellamy checked her mirror again she was surprised by how close the truck was to the sedan. Bellamy lost sight of the vehicles briefly going through a turn and when she saw them again, the truck was attempting to pass the sedan on the inside of the on-ramp. After Bellamy merged onto I-205, she checked her mirror and saw the sedan coming out of the shrubbery on the shoulder of the highway and across the lanes of traffic.

Allyson Terry also witnessed the accident. Terry testified she was driving on I-205 when she saw "a blue car in the air coming through the trees towards the freeway." 2 VRP at 422. The car hit a motorcycle directly in front of Terry. Terry was able to stop her car and go attempt to assist the motorcyclist. Terry also checked on the driver of the blue car. The driver was very upset about the accident. Terry testified that she overheard the driver on the phone say "that he brake checked somebody . . . ." 2 VRP at 425.

2

Kevin Snyder testified that he was getting on I-205 when the two cars in front of him caught his attention. Snyder observed a red truck following a blue car by approximately half a car length. On the on-ramp, Snyder saw the brake lights on the blue car light up. The red truck got even closer to the blue car and the blue car's brake lights lit up again. Then the red truck pulled to the right and crossed the fog line to try to pass the blue car. Snyder testified:

> And as they made the corner and they—they kind of straightened out again, basically he ran out of road. That's when the blue car went off the road and shot through the trees and entered into [I-205].

2 VRP at 464. Snyder saw the blue car collide with the motorcycle. Snyder also saw the red truck stop on the side of the road, and he stopped his vehicle to contact the driver. The driver told Snyder he was upset because he had been cut off. Later, Snyder realized the driver of the blue car was Bergstrom, who Snyder knew from work.

Sergeant Justin Maier of the WSP was assigned as the lead detective to investigate the collision. As part of his investigation, Sergeant Maier interviewed Bergstrom and Smith.

Smith confirmed with Sergeant Maier that he was driving the red truck. Smith told Sergeant Maier that he turned onto the on-ramp for I-205 and was following behind a blue car. Smith stated that he was following approximately 10 feet behind the blue car. Smith said that while following the blue car, he had to brake hard twice. After the second time he had to brake, Smith accelerated and pulled alongside the blue car. Then the blue car accelerated and went off the road.

Bergstrom told Sergeant Maier that he was driving the blue car. Bergstrom explained that traffic was getting congested in the right lane to enter the on-ramp so he moved over two lanes, thinking he would have enough time to get back into the lane for the on-ramp. Bergstrom then

3

moved across two lanes of traffic to get back into the lane for the on-ramp. When he got back into the lane for the on-ramp, a red truck was behind him. Maier testified that

> [Bergstrom] said while that red pickup truck was behind him, he applied—or he tapped his brakes one time. And at that point the pickup truck pulled to the right shoulder. He accelerated and got into the gravel on the left shoulder, felt his vehicle begin to fishtail, and he over-corrected, went off the road to the left and out into [I-205].

2 VRP at 586-87. When Bergstrom's car entered I-205, it collided with a motorcycle. As the interview progressed, Bergstrom admitted that he had braked twice when the red truck was behind him.

Smith presented the testimony of Wayne Slagle, an expert in accident reconstruction. Slagle testified there was enough room on the on-ramp for the red truck to pull alongside the blue car. Slagle also testified that it was reasonable to conclude that the driver of the blue car lost control and left the road. Further, Slagle opined that the red truck was behind the blue car when the driver of the blue car lost control. Slagle did not believe that the red truck would have been pushing the blue car off the roadway when the driver of the blue car lost control.

Smith also testified. Smith testified that he was driving home from work when he entered the turn lane to get onto the I-205 on-ramp. When Smith was entering the on-ramp, a blue car came from the far left lane across to enter the on-ramp in front of Smith. Smith was approximately 10 to 12 feet behind the blue car. Smith was "brake checked" by the blue car in front of him. 3 VRP at 769. Then the blue car braked again. Smith had to brake hard enough that his lunch pail slid off the front seat. Smith also testified that his truck "nose dived" when he braked abruptly. 3 VRP at 771. Because Smith was not sure what the driver of the blue car was going to do next, he took "evasive action" and moved to the side of the road. 3 VRP at 773. When Smith pulled

4

alongside the blue car, the driver "flip[ped him] off." 3 VRP at 776. Then the blue car accelerated and started to "fishtail." 3 VRP at 776. Smith slowed down while the blue car lost control and came out onto I-205. Smith testified that his vehicle never contacted the blue car. Smith explained:

> I pulled to the shoulder of the road to get away from [the blue car], to get out of harm's way.
>
> . . . .
>
> He accelerated away from me.

3 VRP at 781. On cross-examination, Smith admitted he pulled to the right shoulder and accelerated to get around the blue car in order to get away from him.

Finally, Bergstrom testified. Bergstrom was travelling in the left lane believing that he would be able to get over to the on-ramp for I-205. He saw a large enough space and moved into the middle lane. Then he moved into the right lane to enter the on-ramp. Once Bergstrom was on the on-ramp, he noticed a red truck right behind him. Bergstrom tapped his brake just so the light would turn on but did not slow down. Bergstrom testified his intent was to let the truck know that it was too close. Bergstrom tapped his brakes twice but never actually slowed down. Then the red truck pulled alongside the right side of his car. Bergstrom testified he made a gesture to ask what the driver was doing but did not flip him off. Bergstrom was scared and believed the truck continued to get closer to him rather than passing. Then Bergstrom's car hit gravel and Bergstrom lost control, went into the bushes, and ended up hitting the motorcycle.

After the close of testimony, the parties discussed jury instructions. Smith originally argued for a necessity instruction. The State argued that necessity was not appropriate in Smith's case. And the trial court expressed concern about giving the instruction because necessity required

that the threatened harm was not brought about by the defendant. The trial court also noted that

the violation of law at issue in the case was an accident causing serious injury—not attempting to

pass on the shoulder. Smith then moved on to argue duress:

> I request leave to do exactly what [the prosecutor] said. And I appreciate that. I think the duress instruction is more appropriate. Could we look at 18.01?

3 VRP at 943.

> Smith proposed a jury instruction for duress that stated:
>
> Duress is a defense to a charge of Vehicular Assault if:
>
> (a) The defendant participated in the crime under compulsion by another who by threat or use of force created an apprehension in the mind of the defendant that in case of refusal [the defendant] [or] [another person] would be liable to immediate death or immediate grievous bodily injury; and
>
> (b) Such apprehension was reasonable upon the part of the defendant; and
>
> (c) The defendant would not have participated in the crime except for the duress involved.
>
> [Threat means to communicate, directly or indirectly, the intent to cause death or grievous bodily injury]
>
> [The defense of duress is not available if the defendant intentionally or recklessly placed [himself] [herself] in a situation in which it was probable that [he] [she] would be subject to duress]
>
> The defendant has the burden of proving this defense by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty [as to this charge].

Clerk's Papers (CP) at 37 (brackets in original). The trial court concluded that the duress defense

did not apply because Smith intentionally or recklessly placed himself in the situation and denied

the requested instruction.

No. 55153-5
(Consol. with 55626-0)

The jury found Smith guilty of vehicular assault. The jury also entered a special verdict finding that Smith operated his vehicle in a reckless manner and with disregard for the safety of others. The jury found Bergstrom not guilty.

The trial court sentenced Smith to six months of work release. The trial court found Smith indigent. The trial court also imposed 12 months of community custody. One condition of community custody required Smith to pay supervision fees as determined by the Department of Corrections.

The State also requested over $30,000 in restitution. The restitution report requested $25,094.58 for Anthem PPO, Clemons' insurance company. Clemons submitted a restitution estimate form stating that Anthem PPO paid $25,094.58. The form was signed under the penalty of perjury. And the restitution report included an explanation of benefits—payments showing the amount of hospital charges for Clemons.

At the restitution hearing, the State relied on the signed restitution estimate to support imposition of the $25,094.58. Smith argued that the information in the restitution report was insufficient to prove the amount of restitution. Specifically, Smith argued that there was nothing in the record showing the insurance company suffered a loss and is owed the amount identified. The trial court ordered the entire amount of restitution requested, $30,729.98: $5,635.40 to Clemons and $25,094.58 to Anthem PPO.

Smith appeals.

ANALYSIS

I. JURY INSTRUCTIONS

Smith argues that the trial court erred by refusing to give the jury instructions on the defenses of necessity and duress. Assuming without deciding that Smith was entitled to jury instructions on necessity and duress, any error was harmless. Accordingly, we affirm Smith's conviction.

Assuming the jury instructions were improperly denied, we apply the constitutional harmless error standard because the failure to instruct the jury on necessity or duress denied Smith his right to present a defense. Under the constitutional harmless error standard, an instructional error is harmless if, considering the record as a whole, the error is harmless beyond a reasonable doubt. *State v. Grimes*, 165 Wn. App. 172, 187, 267 P.3d 454 (2011), *review denied*, 175 Wn.2d 1010 (2012). "To find an error harmless beyond a reasonable doubt, an appellate court must find that the alleged instructional error did not contribute to the verdict obtained." *Id.* at 187-88.

A. NECESSITY JURY INSTRUCTION

The Washington Pattern Jury Instruction on necessity states:

Necessity is a defense to a charge of (fill in crime) if

(1) the defendant reasonably believed the commission of the crime was necessary to avoid or minimize a harm;

(2) harm sought to be avoided was greater than the harm resulting from a violation of the law;

(3) the threatened harm was not brought about by the defendant; and

(4) no reasonable legal alternative existed.

> The defendant has the burden of proving this defense by a preponderance of the evidence. Preponderance of the evidence means that you must be persuaded, considering all the evidence in the case, that it is more probably true than not true. If you find that the defendant has established this defense, it will be your duty to return a verdict of not guilty [as to this charge].

11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 18.02, at 305

(5th ed. 2021) (boldface omitted).

Here, the jury acquitted Bergstrom of vehicular assault, demonstrating that the jury found that Bergstrom was not driving recklessly or driving with disregard for the safety of others. This acquittal resolves the question. If the jury did not find that Bergstrom was driving recklessly or with disregard for the safety of others, then the jury could not have found beyond a reasonable doubt that Smith reasonably believed that he was acting to avoid or minimize any harm or threatened harm caused by Bergstrom. Therefore, the jury's acquittal of Bergstrom shows that the failure to give a necessity instruction did not contribute to the jury's verdict finding Smith guilty of vehicular assault. Because the failure to give the necessity jury instruction did not contribute to the jury's guilty verdict, any error in failing to give the instruction was harmless beyond a reasonable doubt.

B. DURESS JURY INSTRUCTION

> To establish the defense of duress, a defendant must show that
>
> (a) The actor participated in the crime under compulsion by another who by threat or use of force created an apprehension in the mind of the actor that in case of refusal he or she or another would be liable to immediate death or immediate grievous bodily injury; and
>
> (b) That such apprehension was reasonable upon the part of the actor; and
>
> (c) That the actor would not have participated in the crime except for the duress involved.

RCW 9A.16.060(1). However, the "defense of duress is not available if the actor intentionally or recklessly places himself or herself in a situation in which it is probable that he or she will be subject to duress." RCW 9A.16.060(3).

Here, the jury heard all the evidence and acquitted Bergstrom while finding Smith guilty of vehicular assault. As it was with necessity, the jury's verdict acquitting Bergstrom shows, beyond a reasonable doubt, that a duress instruction would not have changed the outcome in Smith's trial. In order for Smith's duress instruction to change the outcome of the trial, the jury would have had to find that Bergstrom's actions were a threat that "created an apprehension in the mind of the actor that in case of refusal he or she or another would be liable to immediate death or immediate grievous bodily injury[.]" RCW 9A.16.060(1). A threat encompasses both direct and indirect communications. *State v. Harvill*, 169 Wn.2d 254, 260, 262, 234 P.3d 1166 (2010).

Under the evidence in this case, the only threat that would support Smith's duress defense is Bergstrom's alleged "brake checking"—an indirect communication to stop following so closely or there will be a car accident. However, under the facts of this case, the jury would have had to find that braking to threaten another driver was reckless driving, a disregard of the safety of others, and a cause of the ultimate collision with Clemons. But by acquitting Bergstrom, the jury found beyond a reasonable doubt that Bergstrom did not drive recklessly, with disregard for the safety of others, or cause the collision with Clemons. Thus, we are convinced beyond a reasonable doubt that the jury would not have found Smith proved the defense of duress had the trial court given such an instruction. Accordingly, any failure in giving the duress instruction did not contribute to the verdict and was harmless.

10

In addition to the jury's acquittal of Bergstrom, the jury's implicit rejection of Smith's credibility also supports the conclusion that the failure to give Smith's proposed duress instruction was harmless. There is an element of subjectivity in proving a duress defense because the threat must create "an apprehension in the mind of the actor that in case of refusal he or she or another would be liable to immediate death or immediate grievous bodily injury." RCW 9A.16.060(1). Therefore, to find that Smith proved his defense of duress, the jury would have to find Smith's claim that Bergstrom's braking actually caused him to fear an immediate car accident. However, because the jury appears to have found Smith's testimony and account of the incident not credible, it is unlikely that it would have accepted his assertion that he acted out of apprehension that Bergstrom's braking would cause an accident. Accordingly, the jury's credibility determination is further support for determining that the trial court's failure to give the duress instruction was harmless.

## II. RESTITUTION

Smith argues that the evidence supporting restitution to Anthem PPO was not supported by sufficient evidence because there was no evidence establishing the actual costs or payments made by Anthem PPO. We agree.

The State must prove the amount of restitution by a preponderance of the evidence. *State v. Deskins*, 180 Wn.2d 68, 82, 322 P.3d 780 (2014). " 'Evidence supporting restitution is sufficient if it affords a reasonable basis for estimating loss and does not subject the trier of fact to mere speculation or conjecture.' " *Id.* at 82-83 (internal quotation marks omitted) (quoting *State v. Hughes*, 154 Wn.2d 118, 154, 110 P.3d 192 (2005), *overruled on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 C. Ct. 2546, 165 L. Ed. 2d 466 (2006)). Claimed losses must be

supported by substantial credible evidence. *Id.* at 82. "Courts may rely on a broad range of evidence—including hearsay—because the rules of evidence do not apply to sentencing hearings." *Id.* at 83.

Here, the only evidence supporting the award of restitution is Clemons' estimate of what a third party paid a different third party—stating that Anthem PPO paid $25,094.58. Although the State also included a list of hospital charges, there was no itemized list of actual payments made by Anthem PPO. The State only presented evidence of what Clemons believed Anthem PPO paid, but there is no indication of where Clemons received that information or substantial credible evidence showing what losses Anthem PPO actually incurred. Therefore, the State failed to establish the amount of restitution owed to Anthem PPO. We reverse that amount of restitution and remand for further proceedings.

### III. COMMUNITY CUSTODY SUPERVISION FEES

Smith argues that the community custody supervision fees should be stricken from his judgment and sentence because the trial court did not intend to impose any discretionary LFOs. The State concedes that the trial court intended to waive discretionary LFOs and agrees that the community custody supervision fees should be stricken.

Community custody supervision fees are discretionary LFOs. *State v. Starr*, 16 Wn. App. 2d 106, 109, 479 P.3d 1209 (2021). The trial court intended to waive discretionary fees. And the State concedes that the community custody supervision fees should be stricken. We accept the State's concession and remand to strike the community custody supervision fees.

No. 55153-5
(Consol. with 55626-0)

We affirm Smith's convictions, reverse the imposition of restitution to Anthem PPO and community custody supervision fees, and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

PRICE, J.

We concur:

GLASGOW, J.

LEE, J.