

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE APR 1 9 2018

CHIEF JUSTICE

This opinion was filed for record

at 8:00am on April 19, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |
|---|---|
| STATE OF WASHINGTON, | NO. 94393-1 |
| Respondent, | |
| v. | EN BANC |
| EVAN BACON, | Filed APR 1 9 2018 |
| Petitioner. | |

GORDON McCLOUD, J.—Evan Bacon, a juvenile, pleaded guilty to second degree robbery and received a suspended disposition. The State challenged the juvenile court's authority to enter such a disposition, arguing that the Juvenile Justice Act of 1977 (JJA), chapter 13.40 RCW, does not give trial courts the statutory authority to suspend juvenile dispositions (except in specific situations that are absent here). The Court of Appeals agreed, and so do we. We therefore affirm and hold that juvenile court judges lack statutory authority to suspend JJA dispositions,

1

even manifest injustice JJA dispositions, unless the disposition fits under one of the specifically listed exemptions in RCW 13.40.160(10).

FACTS

Bacon pleaded guilty to robbery in the second degree after stealing a purse. Based on his criminal history, the standard range disposition for this crime was 52-65 weeks. RCW 13.40.0357. The State and the juvenile probation officer both recommended a disposition within that standard range.

Bacon, in contrast, requested a "manifest injustice" disposition below that range; he sought a sentence of 30 days plus 12 months of community supervision with standard probation conditions and "all conditions deemed appropriate by the court." Clerk's Papers (CP) at 10. Bacon argued that a manifest injustice finding was appropriate because (1) Bacon did not contemplate that his conduct would cause or threaten serious bodily injury, RCW 13.40.150(3)(h)(i), and (2) Bacon made significant growth in the months before the robbery. Specifically, Bacon stated that he had been working to incorporate the skills he learned at a Juvenile Rehabilitation Administration (JRA) facility. Both Bacon and his mother reported that he had been doing better since his release. Additionally, Bacon had services already in place within the community—Sea Mar Community Health Centers counseling, the Boys

2

and Girls Clubs, and TeamChild. Bacon noted that the Bellevue School District had recently completed a comprehensive evaluation of his needs and that he had been placed at Bellevue High School to address his academic, emotional, and behavioral concerns. Bacon concluded that "if he is sent right back to JRA again, there is a real risk that [he] will become institutionalized." CP at 14.

The juvenile court agreed with Bacon in part. On October 14, 2015, that court imposed a 65 week disposition, but suspended it all for a period of 12 months. CP at 22-23. The court acknowledged that this disposition fell outside the standard range and entered a "manifest injustice" finding under RCW 13.40.150(3)(h)(i) to support its imposition. Specifically, the court found that Bacon did not cause or contemplate that his actions would cause serious bodily injury and that he needed "[m]ental health treatment and qualifie[d] for a suspended disposition pursuant to RCW 30.40.167." CP at 23.

PROCEDURAL HISTORY

The State moved for reconsideration of the manifest injustice disposition on the ground that the facts did not support the manifest injustice finding. In addition, the State opposed the decision to suspend Bacon's disposition, arguing:

3

> There is no statutory authorization for the Court to suspend a JRA commitment where Option B, SSODA [special sex offender disposition alternative], MHDA [mental health disposition alternative], and C[D]DA [chemical dependency disposition alternative] are unavailable under RCW 13.40.0357, 13.40.162, 13.40.167, and 13.40.165. Option D ("Manifest Injustice") allows the Court to *impose* a disposition outside the standard range, but does not authorize a court to *suspend* one. To conclude otherwise would be to render the sections regarding Option B, SSODA, MHDA, and C[D]DA—and their respective eligibility restrictions—superfluous and, essentially, meaningless.

CP at 58 (State's Proposed Conclusions of Law 10). The juvenile court declined to reconsider its October 14 decision.

On April 29, 2016, after Bacon failed to meet the conditions of his suspended disposition, the court revoked it. The court noted that this was a manifest injustice disposition and therefore reconsidered the initial 65 week sentence and instead ordered 40 weeks of commitment to a JRA facility.

After the court revoked Bacon's suspended disposition, the State's appeal became moot. However, both parties and the Court of Appeals commissioner "agree[d] that the issue [of whether a juvenile court can impose a suspended sentence under the manifest injustice portion of the JJA] is recurring and that an appellate

4

decision by a panel of judges is warranted."[1] The State did not pursue its argument that the court's findings failed to support a manifest injustice finding. Both parties submitted new briefings regarding the juvenile court's authority to suspend a standard range disposition.

Division One reversed. It adhered to its prior decision in *State v. A.S.*, 116 Wn. App. 309, 65 P.3d 676 (2003) (per curiam), which held that juvenile courts lack inherent authority to suspend dispositions and can do so only when the legislature grants such authority. It therefore held that the JJA did not authorize suspended dispositions for juveniles convicted of robbery in the second degree, even with a finding of manifest injustice. *State v. Bacon*, 197 Wn. App. 772, 391 P.3d 556, *review granted*, 189 Wn.2d 1008, 403 P.3d 39 (2017).

Bacon moved for reconsideration based on this court's decision in *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017). The Court of Appeals denied that motion. This court granted review, in part to resolve the conflict between

---

[1] Ruling Referring Accelerated Review Issue to Panel, *State v. Bacon*, No 74233-7-I, at 2 (Wash. Ct. App. Sept. 12, 2016) (citing *In re Pers. Restraint of Cross*, 99 Wn.2d 373, 377, 662 P.2d 828 (1983)).

5

Division One's decision in this case and Division Three's decision to the contrary in

*State v. Crabtree*, 116 Wn. App. 536, 66 P.3d 695 (2003).[2]

During oral arguments in this court, both parties acknowledged that the JJA

did not give the juvenile court the statutory authority to suspend Bacon's disposition,

even with the manifest injustice finding.[3] As discussed below, we agree.[4] We also

reject the argument that the trial court possesses inherent authority to impose such

sentences in the face of the statute's directive to the contrary.

STANDARD OF REVIEW

Issues of statutory construction are questions of law that we review de novo.

*State v. Martin*, 137 Wn.2d 774, 788, 975 P.2d 1020 (1999).

---

[2] In *Crabtree*, a juvenile received a suspended sentence after a manifest injustice finding. Division Three affirmed the juvenile court, stating, "Once a manifest injustice is on the table, the court's discretion is broad enough to encompass whatever dispositional elements the court deems most suitable to the circumstances." 116 Wn. App. at 546. We disagree.

[3] Wash. Supreme Court oral argument, *State v. Bacon*, No. 94393-1 (Feb. 22, 2018), at 9 min., 55 sec. to 10 min., 15 sec.; 19 min., 55 sec. to 20 min., 40 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

[4] Because "'it is well established that a party concession or admission concerning a question of law or the legal effect of a statute as opposed to a statement of fact is not binding on the court,'" (*State v. Knighten*, 109 Wn.2d 896, 902, 748 P.2d 1118 (1988) (plurality opinion) (emphasis omitted) (quoting *Dettore v. Brighton Twp. ex rel. Brighton Twp. Bd. of Appeals*, 91 Mich. App. 526, 534, 284 N.W.2d 148 (1979), *vacated on other grounds*, 408 Mich. 957, 294 N.W.2d 692 (1980)), we provide our analysis below.

ANALYSIS

I.  Juvenile courts do not have the inherent authority to suspend dispositions

For many years, this court has held that trial courts lack authority to suspend sentences without statutory authorization to do so. *State v. Bird*, 95 Wn.2d 83, 85, 622 P.2d 1262 (1980) ("There is no dispute that the trial court lacks inherent authority to suspend a sentence." (citing *State v. Gibson*, 16 Wn. App. 119, 127-28, 553 P.2d 131 (1976)); *State ex rel. Lundin v. Superior Court*, 102 Wn. 600, 602, 174 P. 473 (1918) ("we think the law is, in the absence of statute, that courts do not have the inherent authority to suspend sentence indefinitely, nor did they ever possess any such power at common law"). [5]

Those older cases remain binding on this point. As this court recently emphasized, "'[T]he fixing of legal punishments for criminal offenses is a legislative

---

[5] *See also State v. Monday*, 85 Wn.2d 906, 909-10, 540 P.2d 416 (1975) ("it is the function of the legislature and not of the judiciary to alter the sentencing process"), *overruled in part on other grounds by In re Pers. Restraint of Phelan*, 97 Wn.2d 590, 596, 647 P.2d 1026 (1982); *State v. Mulcare*, 189 Wn. 625, 628, 66 P.2d 360 (1937) ("Fixing of penalties or punishments for criminal offenses is a legislative function, and the power of the legislature in that respect is plenary and subject only to constitutional provisions against excessive fines and cruel and inhuman punishment."); *State v. Le Pitre*, 54 Wn. 166, 169, 103 P. 27 (1909) ("acknowledged power of the legislature to provide a minimum and maximum term within which the trial court may exercise its discretion in fixing sentence").

7

function.'" *State v. Pillatos*, 159 Wn.2d 459, 469, 150 P.3d 1130 (2007) (quoting *State v. Hughes*, 154 Wn.2d 118, 149, 110 P.3d 192 (2005), *overruled in part on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006)). Thus, in *Pillatos*, this court rejected the State's argument that trial courts could develop their own procedures for imposing exceptional sentences above the standard range, even after the United States Supreme Court completely invalidated our state's statutory provisions for imposing such sentences.[6] *Id.* at 480. We held that trial courts had to wait for legislative authorization to impose such sentences; they could not impose such exceptionally high sentences without that statutory authority. *Id.* at 469.

Thus, the rule established by our older cases retains its vitality today: the power to impose and suspend sentences must be granted by the legislature.[7] *State ex rel. Woodhouse v. Dore*, 69 Wn.2d 64, 69, 416 P.2d 670 (1966) ("The power to defer

---

[6] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[7] There are, of course, constitutional limits on that legislative power. *E.g.*, *Blakely*, 542 U.S. 296; *Houston-Sconiers* 188 Wn.2d 1. But as discussed in Section III below, such constitutional limits are not really argued here.

imposition of sentence, as with the power to suspend, must come expressly from the legislature.").

II. The legislature did not grant juvenile courts the statutory authority to suspend manifest injustice dispositions, except under listed exemptions that are absent here

The JJA did not give the trial court the authority to suspend the disposition in this case. The JJA contains very specific sentencing standards. This includes RCW 13.40.0357, a sentencing schedule, which declares, "This schedule *must* be used for juvenile offenders. The court may select sentencing option A, B, C, or D." (emphasis added). Under the standard sentencing schedule ("Option A: Juvenile Offender Sentencing Grid"), Bacon would have received a 52-65 week disposition. RCW 13.40.0357 also describes several other options—"Option B: Suspended Disposition Alternative," "Option C: Chemical Dependency/Mental Health Disposition Alternative," and "Option D: Manifest Injustice"—that might be used to determine Bacon's disposition.

Based on his age, prior adjudications, and current offense, Bacon was eligible only for Option A: Juvenile Offender Sentencing Grid or Option D: Manifest Injustice. He was not eligible for the other options. The juvenile court in this case entered an Option D manifest injustice finding. Option D states, "If the court

determines that a disposition under option A, B, or C would effectuate a manifest injustice, the court shall impose a disposition outside the standard range under RCW 13.40.160(2)." Option D does not mention suspended dispositions.

The legislature did specifically address the juvenile court's authority to suspend dispositions elsewhere, though. RCW 13.40.160(10) states, "Except as provided under subsection (3),[8] (4),[9] (5),[10] or (6)[11] of this section, or option B of RCW 13.40.0357, or RCW 13.40.127, the court shall not suspend or defer the

---

[8] "If a juvenile offender is found to have committed a sex offense, other than a sex offense that is also a serious violent offense as defined by RCW 9.94A.030, and has no history of a prior sex offense, the court may impose the special sex offender disposition alternative under RCW 13.40.162." RCW 13.40.160(3).

[9] "If the juvenile offender is subject to a standard range disposition of local sanctions or 15 to 36 weeks of confinement and has not committed an A- or B+ offense, the court may impose the disposition alternative under RCW 13.40.165." RCW 13.40.160(4).

[10] "If a juvenile is subject to a commitment of 15 to 65 weeks of confinement, the court may impose the disposition alternative under []RCW 13.40.167[, repealed by Laws of 2016, ch. 106, § 4]." RCW 13.40.160(5).

[11] "When the offender is subject to a standard range commitment of 15 to 36 weeks and is ineligible for a suspended disposition alternative, a manifest injustice disposition below the standard range . . . , the court in a county with a pilot program under []RCW 13.40.169 may impose the disposition alternative under RCW 13.40.169[, expired July 1, 2005]." RCW 13.40.160(6) (reviser's note omitted).

10

imposition or the execution of the disposition."[12] Bacon was ineligible for any of these suspended disposition options because of the nature of his offense (a second degree robbery conviction that is a B+ juvenile disposition offense is exempt from RCW 13.40.160(10)'s suspended sentence options).

Of critical importance here, RCW 13.40.160(10)'s list of exceptions to the suspended disposition prohibition *does not* include subsection (2), under which Bacon was sentenced. Subsection (2), which is cross-referenced by the text of Option D, is the one that describes a court's authority to impose a non-standard-range disposition after a finding of manifest injustice.

Under the statutory interpretation rule expressio unius est exclusio alterius, the legislature's decision to omit subsection (2) from RCW 13.40.160(10)'s list of specific exemptions to the bar on suspended sentences must be considered

---

[12] This subsection has been amended several times since its original adoption in 1981. *See* former RCW 13.40.160(10) (2007); former RCW 13.40.160(9) (2004); former RCW 13.40.160(8) (1997); former RCW 13.40.160(8) (1995); former RCW 13.40.160(8) (1994); former RCW 13.40.160(7) (1992); former RCW 13.40.160(6) (1981).

intentional. *Wash. Nat. Gas Co. v. Pub. Util. Dist. No. 1*, 77 Wn.2d 94, 98, 459 P.2d 633 (1969).

The legislative history of RCW 13.40.160(10) compels the same conclusion. In 1980, this court held that trial courts possessed the authority to suspend dispositions under the JJA. *Bird*, 95 Wn.2d at 89. Then, in 1981, the legislature amended chapter 13.40 RCW to state, "[T]he court shall not suspend or defer the imposition or the execution of the disposition." Former RCW 13.40.160(6) (1981), LAWS OF 1981, ch. 299, § 13; *see also A.S.*, 116 Wn. App. at 314-15 & n.24. This statute was later modified and recodified at RCW 13.40.160(10). As stated by the Court of Appeals in *A.S.*, the 1981 legislative amendment "effectively overruled *Bird* by unambiguously removing, and later limiting, the discretion to suspend juvenile dispositions." 116 Wn. App. at 315. Some exemptions have been added since the original amendment, but manifest injustice dispositions were never included in the list of permitted suspended dispositions.

We therefore hold that a finding of manifest injustice (Option D) does not provide a juvenile court with the discretion necessary to suspend a sentence under

the JJA. The decision to the contrary in *State v. Crabtree*, 116 Wn. App. 536, is disapproved.

III.    Bacon's equity argument is a policy question for the legislature

Both parties agree that the Eighth Amendment does not compel us to recognize a trial court's inherent authority to impose suspended dispositions. *See* Wash. Supreme Court oral argument, *supra*, at 2 min., 55 sec. to 3 min., 50 sec.; 14 min. to 14 min., 10 sec.; U.S. CONST. amend. VIII. Rather, Bacon argues that an equitable application of *Houston-Sconiers* supports such a result. But our holding in *Houston-Sconiers* was based squarely on the United States Constitution, not simply on equity or policy. In addition, our decision in *Houston-Sconiers* concerned only the length of the sentence, not the authority to suspend it. 188 Wn.2d at 9. We did not address whether or when a disposition could be suspended in juvenile court.

Additionally, none of the Eighth Amendment decisions cited by Bacon provide direct support for the argument made in his briefs—but withdrawn at oral argument—that the United States Constitution requires juvenile courts to have the power to suspend dispositions. *See Miller v. Alabama*, 567 U.S. 460, 465, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012); *Graham v. Florida*, 560 U.S. 48, 82, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010); *Roper v. Simmons*, 543 U.S. 551, 578, 125 S. Ct.

13

1183, 161 L. Ed. 2d 1 (2005). All of these cases hold that children are different from adults and that those differences require trial court discretion at sentencing and/or categorically bar certain juvenile sentences. But none of them hold that the United States Constitution requires sentencing courts to possess the authority to suspend dispositions for juveniles.

## CONCLUSION

The JJA is designed to "[p]rovide for punishment commensurate with the age, crime, and criminal history of the juvenile offender"[13] and to "[p]rovide for the handling of juvenile offenders by communities whenever consistent with public safety."[14] Suspended dispositions based on manifest injustice findings might well further those goals. But that is a policy argument for the legislature. As currently written, the JJA clearly limits the juvenile court's authority to impose suspended manifest injustice dispositions to the specific situations listed in RCW 13.40.160(10). We therefore affirm the Court of Appeals and hold that manifest

---

[13] RCW 13.40.010(2)(d).

[14] RCW 13.40.010(2)(h).

injustice dispositions cannot be suspended unless they fit within one of the exclusive,

listed statutory prerequisites to imposing a suspended disposition.

_George McClod, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Madsen, J._

_Owens, J._

_Stephens, J._

_Wiggins, J._

_González, J._

_Yu, J._