FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
NOVEMBER 21, 2024

_González, C.J._
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 102627-7 |
| Respondent, | ) | |
| v. | ) | En Banc |
| JENNIFER A. RICHARDS, | ) | |
| Petitioner. | ) | Filed: November 21, 2024 |

JOHNSON, J.—Jennifer Richards was convicted of having a dangerous dog at large and was sentenced to nearly a year in jail, which was suspended on the condition of surrendering her dog for termination. The district court ordered that Jennifer Richards would not have to serve her 364-day sentence if she forfeited her property—her dog named Thor—following her conviction under Revised Code of Wahkiakum County (RCWC) 16.08.050. The Court of Appeals vacated the condition and determined the district court exceeded its statutory authority in imposing the condition. We hold that forfeiture—whether criminal or civil—

requires statutory authorization and that the district court exceeded its sentencing powers when it ordered Richards to forfeit Thor. We affirm the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

Jennifer Richards's dog, Thor, serves as an emotional support animal to Richards's daughter, who suffers from health complications. Thor was declared a "potentially dangerous dog"[1] under RCWC 16.08.040[2] in June 2018, after biting Richards's neighbor's dog. Thor bit the same dog again in April 2019 and was declared a "dangerous dog" under Wahkiakum County Code.[3] Clerk's Papers (CP)

---

[1] "'Potentially dangerous dog' means any dog that when unprovoked: (a) inflicts bites on a human or a domestic animal either on public or on private property, or (b) chases or approaches a person upon the streets, sidewalks, or any public grounds in a menacing fashion or apparent attitude of attack, or any dog with a known propensity, tendency, or disposition to attack unprovoked, to cause injury, or to cause injury or otherwise threaten the safety of humans or domestic animals, or (c) chases or approaches a person upon that person's own private property in a menacing fashion or apparent attitude of attack." RCWC 16.08.010.

[2] "A. It is unlawful for any owner of a dog that has been declared to be a potentially dangerous dog, to keep such dog within Wahkiakum County unless such owner has procured a currently valid certificate of registration from the Animal Control Authority.

"B. The owner of a potentially dangerous dog shall obtain a certificate of registration for such dog from the Animal Control Authority. A certificate of registration is valid for two years from the date of issuance.

"C. A Fifty-Dollar fee shall be charged for registration of a potentially dangerous dog pursuant to this section.

"D. It is unlawful for any person to cause, permit, or allow any potentially dangerous dog owned, controlled, or kept by him or her to roam, run or stray away from property he or she owns, rents, or otherwise controls. A potentially dangerous dog may be away from the property of its owner only if it is securely leashed and under the direct control and supervision of its owner or the owner's designee."

[3] "'Dangerous dog' means any dog that according to the records of the appropriate authority: (a) has inflicted severe injury upon a human being without provocation on public or private property, (b) has killed a domestic animal without provocation while off the owner's property, or (c) has been previously found to be potentially dangerous, the owner having received notice of such and the dog again aggressively bites, attacks or endangers the safety of humans or domestic animals." RCWC 16.08.010.

at 188. Both the state and county codes require certain actions of the owner of a

dangerous dog, such as registering the dog and having the dog restrained at all

times, on a leash or in a fenced yard. RCWC 16.08.050(F);[4] RCW 16.08.080(6).

In September 2020, Richards left Thor on her porch while she ran to the

pharmacy to get medication for her daughter. Thor was not enclosed and was not

leashed, but he did not leave Richards's property. Police were called to check on a

loose dangerous dog. Thor barked at the officer who attempted to secure the

animal but did not bite. The first officer called for backup, and they monitored

Thor until Richards returned home and secured the dog. The officers informed

Richards that the incident would be forwarded to the prosecutor's office.

Wahkiakum County (County) charged Richards with one count of having a

dangerous dog at large in violation of RCWC 16.08.050(F)[5] and RCW 16.08.100,[6]

---

[4] Owners of dangerous dogs must have a valid certificate of registration, received on showing of (1) a proper enclosure with a conspicuous warning sign, (2) a surety bond issued by an insurer in the sum of at least $50,000 payable to any person injured by the dog, and (3) a policy of liability insurance in the amount of at least $50,000. The registration must be renewed annually. The dog must wear a muzzle and be restrained by a chain or leash under the physical restraint of a responsible person when outside of the proper enclosure.

[5] "It is unlawful for an owner of a dangerous dog to permit the dog to be outside the proper enclosure unless the dog is muzzled and restrained by a substantial chain or leash and under physical restraint of a responsible person. The muzzle shall be made in a manner that will not cause injury to the dog or interfere with its vision or respiration but shall prevent it from biting any person or animal."

[6] "(1) Any dangerous dog shall be immediately confiscated by an animal control authority if the: . . . (d) dog is outside of the dwelling of the owner, or outside of the proper enclosure and not under physical restraint of the responsible person."

punishable pursuant to RCWC 16.08.090(B)[7] and RCW 16.08.100(1).[8] Eventually, the County and Richards stipulated that the legal grounds under which Thor was declared a dangerous dog was solely based on RCWC 16.08.010, and that he was not designated dangerous based on state law.[9] Thus, Richards was guilty based on the county ordinance and not state law. The district court convicted Richards of a gross misdemeanor after a stipulated bench trial.

At sentencing, the County recommended that Richards receive the maximum sentence and fine, but that the sentence be suspended once Thor was euthanized by the Humane Society of Cowlitz County. The district court sentenced Richards to 364 days in jail plus 24 months of probation. The court documents did not specify that the sentence was suspended, noting 0 days suspended, but seemed to present an alternative to confinement if Richards surrendered the dog to the humane society. The parties have agreed that surrendering the dog would result in Thor's

---

[7] "Any person violating any of the provisions of Section 16.08.050 shall be subject to the punishments prescribed by Chapter 16.08 of the Revised Code of Washington, as now or hereafter amended."

[8] State law specifies that the dog in violation must be immediately confiscated. The animal control authority must serve notice on the dog owner, specifying the reason for confiscation, that the owner is responsible for costs of confinement, and that the dog will be destroyed if the deficiencies are not corrected within 20 days. The animal control authority will then destroy the dog if the deficiencies are not corrected. In addition, the owner is guilty of a gross misdemeanor.

[9] State law has a different definition of dangerous dog, which Thor does not meet: "'Dangerous dog' means any dog that (a) inflicts severe injury on a human being without provocation on public or private property, (b) kills a domestic animal without provocation while the dog is off the owner's property, or (c) has been previously found to be potentially dangerous because of injury inflicted on a human, the owner having received notice of such and the dog again aggressively bites, attacks, or endangers the safety of humans." RCW 16.08.070(2).

euthanasia. The judgment and sentence (J&S) also specified that if Richards did not surrender the dog by the following day, she would remain in custody until she provided proof that the dog had been surrendered. Richards appealed to the superior court, which affirmed her conviction and sentence.

Richards then appealed the conviction and sentence to the Court of Appeals, Division Two. The Court of Appeals affirmed Richards's gross misdemeanor conviction based on the county ordinance. However, the court remanded for resentencing, determining that the district court had gone beyond its authority and that the condition on the suspended sentence violated the statute and the county ordinance. Specifically, the court found that the prerequisites for destruction of a dog provided in both the state law and county ordinance were not met, and thus Thor was not subject to destruction. *State v. Richards*, 28 Wn. App. 2d 730, 756, 537 P.3d 1118 (2023).

Both Richards and the County petitioned for review in this court. We granted review of the issue raised by the County only: whether the district court's condition on the suspended sentence fell within its misdemeanor sentencing authority.[10] *State v. Richards*, 2 Wn.3d 1027 (2024).

---

[10] We accepted amicus curiae briefing from the Animal Legal Defense Fund.

ISSUE

Did the district court act within its sentencing authority when it conditioned the suspension of Richards's misdemeanor sentence on turning her dog over to the county animal control authority?

ANALYSIS

We review sentencing conditions for abuse of discretion. "'An abuse of discretion occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" *State v. Deskins*, 180 Wn.2d 68, 77, 322 P.3d 780 (2014) (quoting *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012)).

In this case, the County claims that the district court has a broad and essentially boundless power to choose what it deems justified when sentencing, so the judge did not abuse their discretion. Richards argues that the judge must follow procedural grants of authority, and that the judge here had no statutory power to demand the surrender of her dog and thus abused their discretion based on that lack of authority.

To begin, we look at how the property and the court order in this case are characterized. A dog is nonfungible personal property, and the owner has a valid legal ownership interest unless some procedure disrupts that interest. Although the parties' briefing addresses the sentence using terms like "surrender," to forcibly

deprive an owner of specific property generally constitutes a forfeiture. Hence, the alternative sentence requiring forfeiture that Richards received constitutes criminal forfeiture because the sentence deprived Richards of specific, nonfungible personal property. Criminal forfeiture such as this requires statutory authority. "Every jurisdiction that has considered the question has held that the power to order forfeiture is purely statutory," *State v. Alaway*, 64 Wn. App. 796, 800, 828 P.2d 591, *review denied*, 119 Wn.2d 1016 (1992). Accordingly, our state legislature provides a statutory basis for certain deprivations of property in connection with criminal activities, authorizing forfeiture and statutorily eliminating the owner's property rights. RCW 69.50.505 (authorizing the seizure and forfeiture of property related to the manufacture of controlled substances); RCW 10.105.010 (authorizing the forfeiture of property used as an instrumentality in the commission of a felony). The County does not identify any alternative, nonstatutory basis supporting forfeiture. Thus, we must determine whether the sentence that deprived Richards of her personal property was authorized by any statutory power.

Additionally, in this case, Richards was sentenced by a district court. District courts are courts of limited jurisdiction created by the legislature and, as such, must operate under specific grants of statutory authority. *State v. Granath*, 190 Wn.2d 548, 551, 415 P.3d 1179 (2018). For example, RCW 3.66.060(1) grants district courts jurisdiction over misdemeanors and gross misdemeanors for violations of

city or county ordinances, and allows imposition of up to a $5,000 fine and/or one year in jail. We must decide whether any specific statute authorizes the district court to order the criminal forfeiture of personal property as a condition of sentencing for the crime involved here.

The county ordinance at issue has no plain language authorizing criminal forfeiture. RCWC 16.08.090.[11] The county ordinance does address civil or administrative forfeiture of a dangerous dog. RCWC 16.08.110. Under the ordinance, civil forfeiture is a separate procedure from criminal forfeiture imposed on a defendant during sentencing, so this county ordinance does not apply to the criminal forfeiture order that occurred here. Even assuming the civil forfeiture ordinance applies in this context, the County did not meet the required prerequisites provided.[12]

Likewise, the incorporated state statute's penalties do not address criminal forfeiture either. RCW 16.08.100. The statute lists prerequisites to what is akin to civil forfeiture, and there are several prerequisites not met here—*including notice*

---

[11] The county ordinance incorporates punishments provided in the state statute: "Any person violating any of the provisions of Section 16.08.050 shall be subject to the punishments prescribed by Chapter 16.08 of the Revised Code of Washington, as now or hereafter amended." RCWC 16.08.090(B).

[12] RCWC 16.08.080(C) ("No potentially dangerous dog or dangerous dog confiscated by the animal control authority shall be returned to any owner until such owner has paid all civil penalties and costs which have been assessed against such owner under this chapter."), .110(B) (requiring prompt, reasonable efforts to identify the dog's owner, .110(C) (requiring notice to owner of impounded dog), .110(D) (allowing owner to correct violations that led to impoundment and to redeem dog), .110(E) (giving owner 96 hours to redeem impounded dog).

*and an opportunity to correct any deficiencies*. Neither the state statute nor the county ordinance provides the statutory authority to order criminal forfeiture of an animal without any procedural due process requirements.

The County argues that RCW 3.66.067 is an independent source of authority for sentencing and is sufficient in itself to give a district court the statutory authority to condition suspension of a sentence on surrendering a dog. The County asserts that RCW 3.66.067 grants sentencing courts broad discretion in choosing whether or under what conditions a defendant's sentence may be suspended and what conditions may be required for a suspended sentence.

The County argues that *Granath* and *Deskins* support its theory about the broad power granted in RCW 3.66.067. Neither of those cases support the breadth of authority argued for here. In *Granath*, the order of the district court set conditions of behavior for a suspended sentence but did not order any forfeiture of property. Further, that case expressly acknowledged that district courts may operate only under statutory authority. *Granath*, 190 Wn.2d at 551.

Likewise, in *Deskins*, the court did acknowledge the statutory authority to impose broad conditions of probation, but those conditions were behavior related, setting conditions on what the defendant could not do while on probation. This is a crucial distinction between the permissible condition in *Deskins* and the impermissible forfeiture in this case. In *Deskins*, as punishment for animal cruelty

and confining animals in an unsafe manner, the defendant was prohibited from "'own[ing], acquir[ing] or liv[ing] with pets or livestock during the probationary period.'" 180 Wn.2d at 75 (quoting court papers). Deskins had seven days to rehome her animals, without restriction as to where the animals would go or what would happen to the animals when the probationary period (of only two years) ended. In contrast to the sentence imposed on Richards, Deskins's animals would not only survive the sentence but could potentially be reunited with Deskins once her sentence was served. Deskins was not required to immediately forfeit specific, nonfungible property for permanent destruction—Deskins was required to conform her animal-ownership behavior to the temporary standard crafted by the sentencing court in the pursuit of rehabilitation and community safety. Further, while the court in *Deskins* ordered that her pets would be forfeited if not rehomed within the seven days, we did not review the issue of forfeiture in that case because the issue was moot, as the probationary period had ended and Deskins never actually forfeited any of her animals. Here, we review a very different sentence altogether, as Richards's sentence was not a probationary ban on animal possession but effectively an order to permanently forfeit possession of a specific dog.

The suspended sentence statute, RCW 3.66.067, is not applicable here. On the J&S, the order to surrender the dog seems to have been presented as an alternative sentence—either 364 days of jail or give up the dog, and the J&S says

10

364 days imposed with 0 days suspended. Even if that general suspended sentence statute did somehow apply, that statute contains no language authorizing criminal forfeiture.

In short, we agree with the Court of Appeals that a district court cannot impose forfeiture absent statutory authorization, and the State is unable to point to such authorization here. When courts impose forfeiture in a civil or administrative matter, they do it through statutory civil forfeiture authorization. *See, e.g.*, RCW 69.50.505; RCW 77.15.070. Those statutes require notice and opportunity to be heard. When courts impose forfeiture after a criminal conviction, they also act pursuant to statute, and the criminal forfeiture statutes in Washington have the same procedural requirements in common—notice, time for response, and opportunity to be heard. *See, e.g.*, RCW 9A.83.030(3)-(5); RCW 9.46.231(2)-(5); RCW 9.68A.120; RCW 10.105.010(3)-(5). The legislature specifies when and where forfeiture may be applied; and where it has done so, certain procedural protections must be followed. The procedural protections apply any time a valid property interest exists, as is the case with a pet dog.

No state statute or county ordinance authorizes criminal forfeiture of animals as a consequence of a misdemeanor conviction or as a condition of a misdemeanor sentence where it is suspended for some period of time. Lacking this statutory authorization, we hold that the district court exceeded its statutory authority.

The County goes on to argue that the sentence suspension requiring that Thor be surrendered does not contradict the requirements of the civil codes under which dangerous dogs are confiscated and potentially destroyed. Basically, the County claims that the sentence suspension statute does not conflict with the civil statute on dangerous dogs, but rather both provide for different ways to meet the same end and both provide sufficient due process procedures. The County turns again to *Deskins*, as evidencing that a seemingly contradictory law can set a floor for sentencing and, under RCW 3.66.067, further restrictive sentencing requirements may be added.

We agree with the Court of Appeals' rejection of this argument. The opinion pointed out that *Deskins* did not address the power of a district court to "impose a condition on a suspended sentence that contradicts the requirements of a statute or ordinance." *Richards*, 28 Wn. App. 2d at 754. Both the county ordinance and the state law on dangerous dogs set specific requirements that must occur before a dog can be destroyed, such as passage of a certain amount of time and an opportunity to cure the violation. The court stated that the district court's alternative sentence was untethered from the limitations adopted by the state and local laws.

RCWC 16.08.090(B) states that any person who violates the County's dangerous dog ordinance is subject to the punishments prescribed in chapter 16.08 RCW. RCW 16.08.100(1) provides the relevant punishments, including what the

animal control authority must do with a dangerous dog and the grounds for the gross misdemeanor. The gross misdemeanor and its associated sanctions, as well as the confiscation and termination of the dog, are punishments of a sort. But nothing in either the statute or the ordinance allow for a dog to be destroyed without certain conditions being met. As noted above, nothing in the sentence suspension statute provides for criminal forfeiture either.

The County correctly notes that no statutory conflict exists. But the lack of conflict is irrelevant. The fact remains that the district court went beyond what was authorized in any of the statutes mentioned, and the alternative sentence was untethered from the statutory limitations and the statutory grant of power.

The County also argues that district courts have flexibility to create "just" sentences. The County cites to a number of Washington cases that allowed district courts to order defendants to take actions after a regulatory crime. In one case, a defendant was given the option of a deferred sentence if he cut down trees that were taller than a local ordinance allowed. *Town of Clyde Hill v. Roisen*, 48 Wn. App. 769, 770, 740 P.2d 378 (1987). In another case, a defendant was found guilty of a fire code violation, and her sentence was suspended on condition that she make repairs and have the building inspected again. *City of Seattle v. Leach*, 29 Wn. App. 81, 83, 627 P.2d 159 (1981). In the third case, a defendant was convicted of occupying or allowing someone to occupy a building that was not up to code.

The defendant was given the option by the superior court to avoid 30 days in jail if he did not allow the premises to be occupied without bringing it up to code and did not violate the housing code for 1 year. *City of Seattle v. Brenden*, 8 Wn. App. 472, 506 P.2d 1314 (1973). All of those cases involved the courts ordering the defendants to come into compliance with what the local codes required. None of the cases addressed the matter of forfeiture of property, nor can they be read to support broad, unfettered sentencing discretion. None of the ordinances in those cases set procedural rules for the confiscation of personal property.

The County also asserts that broad sentencing discretion facilitates innovation and creative problem solving. It turns to *State v. K.H.-H.*, 185 Wn.2d 745, 374 P.3d 1141 (2016). In that case, the defendant was ordered to write an apology letter as part of their rehabilitation. Rehabilitation is a purpose allowed under the Juvenile Justice Act of 1977, chapter 13.40 RCW. That case can be easily differentiated from the matter here because, again, it did not involve criminal forfeiture. *State v. K.H.-H.* simply does not apply. Further, "creative sentencing conditions," dissent at 6, even if they do not exceed the court's ability to order the forfeiture of specific personal property, must still reflect some nexus between the condition and the crime punished. Here, the sentence imposed by the district court was, according to the district court judge, "as a practical matter, really . . . a death sentence for [the] animal." CP at 81. The concept that Thor, a

14

blameless animal, should be killed as punishment for Richards's failure to properly confine him deserves some recognition as more than a mere "creative sentencing condition." In contrast to a probationary ban on animal possession, a sentence requiring the death of a specific animal does not have a reasonable connection to the offense. Thus, even if the district court's sentence did not improperly deprive Richards of her personal property without statutory authorization, this sentence would not be justifiable as an "innovative" or "creative" sentencing condition.

The County does not cite to any cases that allow a district court to give a defendant the alternative of serving time or forfeiting their personal property. While a district court may order a defendant to take certain actions, and may even be creative in its orders, it may not go beyond the scope of the statutory authority granted to it.

CONCLUSION

We affirm the Court of Appeals.

Johnson, J.

WE CONCUR:

Gonzáles, C.J.

Gordon McCloud, J.

Yu, J.

Owens, J.

Montoya-Lewis, J.

Whitener, J.

16

No. 102627-7

STEPHENS, J. (dissenting)—The majority poses and answers a question not raised by the parties or addressed by the appellate court below: whether criminal or civil forfeiture requires statutory authorization. Majority at 1-2. No one disputes that it does. Instead, the question we took review to decide concerns the limits of broad sentencing discretion in misdemeanor cases, specifically whether the district court imposed a condition on Richards's suspended sentence that "exceeded its sentencing authority." Resp't's Arg. at 20; Ord. Granting Rev., *State v. Richards*, 2 Wn.3d 1027 (2024).

To answer this question, we should start with the language of the sentencing order. The majority refuses to accept the parties' agreed understanding, and the sentencing judge's clear intention, that the condition at issue was part of a suspended sentence option. The district court sentenced Richards to 364 days in jail but allowed for all or some of the jail time to be suspended upon Richards providing "written proof that the dog Thor has been surrendered to the Cowlitz Humane Society, by

1

9/29[/21] at 3:00pm." Clerk's Papers (CP) at 179.[1] This provision does not constitute an order to forfeit Thor, nor does it contradict or even implicate the civil and criminal forfeiture statutes the majority discusses. I would hold that the condition on Richards's suspended sentence complies with the statutory authority granted to district courts to fashion sentencing conditions that further the goals of rehabilitation and public safety. Accordingly, I respectfully dissent and would reverse that portion of the Court of Appeals opinion invalidating the sentence.

## BACKGROUND

Wahkiakum County (County), like many jurisdictions across the country, protects its citizens from dangerous dogs by ordinance.[2] Per Revised Code of Wahkiakum County (RCWC) 16.08.050(F), the owner of a dangerous dog must comply with a number of requirements, including keeping the dog "muzzled and restrained by a substantial chain or leash and under physical restraint of a responsible

---

[1] *See also* CP at 180 (further describing the terms for suspending the sentence, including that Richards "need not be taken into custody and jail time shall be re-suspended" upon the "surrender of Thor by 9/29/21 at 3:00pm" and that failing timely proof, Richards would "remain in custody until she provides such proof"). While the space on the preprinted form for indicating a suspended sentence does not specify the number of days suspended, neither does it say simply 0, as the majority claims. An asterisk on the 0 as well as a notation to "see below" refers to handwritten language in two separate locations, describing the terms of suspension, under which the precise number of days could be anywhere from 0 to 364 depending on Richards's actions. The full judgment and sentence is reproduced in the appendix below.

[2] As early as 1897, the United States Supreme Court recognized that dogs were "subject to the police power of the State, and might be destroyed or otherwise dealt with, as . . . is necessary for the protection of its citizens." *Sentell v. New Orleans & Carrollton R.R. Co.*, 166 U.S. 698, 705-06, 17 S. Ct. 693, 41 L. Ed. 1169 (1897).

2

person" when it is outside its proper enclosure. Anyone who violates a provision of RCWC 16.08.050 is subject to the punishments set out in chapter 16.08 RCW, pertaining to dangerous dogs. RCWC 16.08.090(B). The relevant statute, RCW 16.08.100(1), provides that "the owner [of a dangerous dog in violation of the statute] shall be guilty of a gross misdemeanor." A district court may sentence a person convicted of a gross misdemeanor to a maximum of 364 days in jail, a maximum fine of $5,000, or both. RCW 9A.20.021(2).

Jennifer Richards violated the County's dangerous dog ordinance in September 2020, when she left her dangerous dog, Thor, unleashed and unsupervised on her front porch. Her neighbor, whose dog Thor had previously attacked, called law enforcement. On stipulated facts, the district court convicted Richards of failure to enclose and restrain a dangerous dog in violation of RCWC 16.08.050. During sentencing, the judge described Thor's history as including "two bites, unprovoked, on an animal." CP at 82. The judge explained she was "most concerned with preventing that same kind of thing from occurring" again and that the restrictions around dangerous dog ownership are designed to "provide some kind of protection for damages that the dog may do." *Id.* Consistent with RCW 9A.20.021, the court imposed a jail term of 364 days but provided that Richards would "not be required to go into custody if [she] provide[d] written proof that the

dog, Thor, ha[d] been surrendered to the Cowlitz Humane Society." CP at 88.

Without such proof, Richards would have to serve her jail time. *Id.*; CP at 180. The

parties and the Court of Appeals describe this as a suspended sentence. Resp't's

Arg. at 20; Resp. to Cross-Pet. for Rev. by Wash. Sup. Ct. at 4; *State v. Richards*, 28

Wn. App. 2d 730, 734, 537 P.3d 1118 (2023).

## ANALYSIS

We accepted limited review in this case to address whether the district court

exceeded its sentencing authority by conditioning Richards's suspended sentence on

the surrender of Thor to the Humane Society of Cowlitz County. The Court of

Appeals treated this condition as requiring Thor's destruction and held that it

impermissibly contradicted the notice and cure provisions of RCWC 16.08.110 and

RCW 16.08.100(1).[3]

---

[3] While the majority states, "[W]e agree with the Court of Appeals that a district court cannot impose forfeiture absent statutory authorization," majority at 11, the Court of Appeals did not mention forfeiture. Instead, its holding centered on a perceived conflict between the condition and civil code provisions concerning notice and an opportunity to correct a violation before a dangerous dog is destroyed. *Richards*, 28 Wn. App. 2d at 756 ("[U]nder the plain language of RCW 16.08.100(1) and RCWC 16.08.110, Thor is not subject to destruction as direct punishment for Richards' violation of the ordinance until the express prerequisites have been met.") As will be discussed, the court misapprehended the sentencing condition as well as the scope of misdemeanor sentencing discretion. But, unlike the majority, it did not unnecessarily opine on the law of forfeiture.

I. The district court acted consistent with its broad misdemeanor sentencing discretion

District courts enjoy significant discretion in misdemeanor sentencing. *Harris v. Charles*, 171 Wn.2d 455, 465, 256 P.3d 328 (2011). Unfettered by the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, district courts may craft creative sentences and conditions "designed to promote rehabilitation, a goal of misdemeanor . . . sentencing." *Id.* at 459. This wide latitude in sentencing is consistent with "the tradition in American criminal jurisprudence . . . that 'the punishment should fit the offender and not merely the crime.'" *State v. Anderson*, 151 Wn. App. 396, 402, 212 P.3d 591 (2009) (internal quotation marks omitted) (quoting *State v. Herzog*, 112 Wn.2d 419, 424, 771 P.2d 739 (1989)). RCW 3.66.067 affirmatively grants district courts the authority to suspend a defendant's sentence subject to a variety of case-specific terms. *See State v. Bacon*, 190 Wn.2d 458, 463, 415 P.3d 207 (2018) (citing *State ex rel. Lundin v. Superior Ct.*, 102 Wash. 600, 602, 174 P. 473 (1918)); *see also Harris*, 171 Wn.2d at 465 ("Misdemeanor sentencing courts have the discretion to issue suspended sentences . . . and conditions with 'carrot-and-stick incentive[s]' to promote rehabilitation." (second alteration in original)). A condition must also "bear a reasonable relation to the defendant's duty

to make reparation, or tend to prevent the future commission of crimes." *State v. Summers*, 60 Wn.2d 702, 707, 375 P.2d 143 (1962).

Our case law recognizes district courts' broad authority to impose creative sentencing conditions, including those that implicate a defendant's fundamental interests or rights. In *State v. Olsen*, we upheld a condition that "disturbe[d] Olsen's privacy interest in order to promote her rehabilitation and protect the public." 189 Wn.2d 118, 126, 399 P.3d 1141 (2017). The district court convicted Olsen of a gross misdemeanor, suspending her sentence on the condition that she submit to random urinalysis testing. *Id.* at 121. Considering the "unique nature and rehabilitative goals of the probation system," we concluded random urinalysis "[was] an important monitoring tool utilized by the courts during the rehabilitative process of probation." *Id.* at 128, 130. We held the condition did not violate the defendant's privacy interest under our state constitution. *Id.* at 128.[4]

---

[4] Applying a similar analysis, we have also upheld conditions of community custody for felony convictions under the SRA that implicate various fundamental rights. *See, e.g.*, *State v. Riley*, 121 Wn.2d 22, 846 P.2d 1365 (1993) (upholding conditions prohibiting defendant from associating with other computer hackers and communicating with computer bulletin boards); *State v. Warren*, 165 Wn.2d 17, 195 P.3d 940 (2008) (upholding lifelong prohibition on defendant contacting his wife); *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 425 P.3d 847 (2018) (upholding condition prohibiting defendant from possessing sexually explicit materials); *State v. Wallmuller*, 194 Wn.2d 234, 449 P.3d 619 (2019) (upholding condition prohibiting defendant from frequenting places where children congregate); *State v. Johnson*, 197 Wn.2d 740, 487 P.3d 893 (2021) (upholding condition requiring defendant to use Internet only through filters).

The majority suggests that district courts' sentencing authority is limited to imposing conditions that affect a defendant's "behavior," but not their property. Majority at 9-10. Our precedent does not support this distinction. In a case also involving dangerous animals, *State v. Deskins*, we upheld a condition even more restrictive than the one at issue here, prohibiting the defendant from living with or owning *any* animals. 180 Wn.2d 68, 75, 322 P.3d 780 (2014). Although the majority describes this as a behavioral condition, in fact, Deskins owned several animals at the time of sentencing and was required to surrender them to another home in order to comply with the condition. *Id*. The only difference with the condition imposed on Richards is that the district court specified where she would surrender Thor: to the Humane Society of Cowlitz County.

The majority also seems to reject the parties' characterization of Richards's suspended sentence, holding RCW 3.66.067 is inapplicable to this case because "the order to surrender the dog seems to have been presented as an alternative sentence."[5] Majority at 11. Whether we characterize the sentence as an alternative to confinement or a suspended sentence or we regard it as affecting Richards's behavior versus her property interest in Thor, the effect is the same. The sentencing judge,

---

[5] The majority is inconsistent in characterizing Richards's sentence and at times describes Thor's surrender as a condition on a suspended sentence. *See* majority at 1 (describing Richards's sentence as almost a year in jail "suspended on the condition of surrendering her dog for termination").

working within the confines of the preprinted form, was clear about her intent to suspend the jail time if and when Richards surrendered Thor to animal control. And she acted well within her statutory authority in imposing such a condition on the suspension of the jail time. As in *Olsen*, the condition served the interests of public safety and Richards's rehabilitation. *See* CP at 82 (explaining court's intention to prevent Thor from attacking more animals unprovoked and incentivize Richards's compliance with dangerous dog ownership requirements). There is no dispute that the district court could have sentenced Richards to 364 days in jail for her gross misdemeanor conviction, with no way to avoid confinement. Instead, it offered her a choice. That this was a very difficult choice, and even that it implicated fundamental rights to own property or enjoy companionship, does not render the condition impermissible. *See Riley*, 121 Wn.2d at 37 ("Limitations upon fundamental rights are permissible, provided they are imposed sensitively.").

II.     Richards's sentence does not constitute an order to forfeit Thor

Most troubling is the majority's characterization of Richards's sentence as ordering a statutorily unauthorized criminal forfeiture. Majority at 2, 12. As noted, neither the parties nor the Court of Appeals viewed the condition as a forfeiture order. The district court sentenced Richards to 364 days in jail with the option of avoiding some or all of the jail time on proof of Thor's surrender to the Humane

8

Society of Cowlitz County. Richards herself describes this as a "tormenting choice" between her dog's life and her "personal freedom." Resp. to Cross-Pet. for Rev. by Wash. Sup. Ct. at 6. Richards's sentence does not include an order to destroy or forfeit Thor.

Neither RCWC 16.08.100 nor RCW 16.08.100 contemplate an action that amounts to criminal or civil forfeiture. The county code calls for the "impoundment and confiscation" of any potentially dangerous dog or dangerous dog in violation of the county's requirements. RCWC 16.08.110(A). If the owner corrects the violation, the owner may "redeem" the dog from impoundment "upon payment . . . of the costs of impoundment." *Id.* at (D), (E). Similarly, the statute requires that animal control must "immediately confiscate[]" any dangerous dog in violation of the statute. RCW 16.08.100(1). The owner then has 20 days to correct the violation and "is responsible for payment of the costs of confinement and control." *Id.*

The majority appears to read the ordinance and statute to not allow criminal forfeiture but to authorize civil forfeiture by analogy. Majority at 8-9 (contrasting lack of authority for criminal forfeiture with language in RCWC 16.08.110 and RCW 16.08.100 that is "akin to civil forfeiture"). But the language of RCWC 16.08.110 and RCW 16.08.100—"impoundment" and "confiscation"—results only in a temporary hold on a dangerous animal, not any form of forfeiture. And, had the

9

County and legislature intended to authorize civil forfeiture in chapter 16.08 RCWC and chapter 16.08 RCW, they knew how to say so explicitly. *See, e.g.*, RCW 16.52.200(2) (mandating court ordered forfeiture of certain animals owned by anyone in violation of the animal cruelty statute); *see also* RCW 69.50.505 (listing as property "subject to seizure and forfeiture" tools and instrumentalities used or intended for use in an act violating the Uniform Controlled Substances Act).

Moreover, RCWC 16.08.100 and RCW 16.08.100 are just two possible ways the County could bring Thor into the custody of animal control. The district court's sentence does not implicate either of these statutes. It simply allows Richards the option of avoiding jail time by surrendering Thor herself. *See Deskins*, 180 Wn.2d at 79 (noting statutory provision "sets a floor for what a trial court must do when it orders forfeiture—it does not set the ceiling for the entire sentence"); *see also Warren*, 165 Wn.2d at 31-35 (upholding sentence condition prohibiting contact with wife despite separate statutory provision governing procedures for no-contact orders). This is an independent way to achieve the goal of separating owner and dangerous dog, even though the choice may not feel like a free choice in light of the penalty of jail time.

The majority at times treats the sentence as an order to *destroy* Thor, and thereby posits a statutory conflict, as did the Court of Appeals. Majority at 13

("[N]othing in either the statute or the ordinance allow for a dog to be destroyed without certain conditions being met"). However, Richards's jail time is conditioned not on Thor's destruction, but on his *surrender to a third party*. As the County points out in its briefing, it had asked the court to order Thor's destruction, but the court "took pains . . . to leave this question open." Suppl. Br. of Cross-Appellant at 4. The County recognizes it is unlikely that Thor, as a designated dangerous dog, would be the subject of adoption once surrendered to the Humane Society of Cowlitz County.[6] If destruction follows, it is not because the court *ordered* it, however, but as a result of Richards's (admittedly difficult) choice to surrender Thor.

My disagreement with the majority lies in its narrow reading of the broad sentencing discretion afforded to district courts to fashion "carrot and stick" incentives that support rehabilitation and public safety. *Harris*, 171 Wn.2d at 465. Under the majority's view, specific statutory authorization would be required for every sentencing condition that requires a convicted person to give up a property or other fundamental right in order to receive a benefit. On top of this, the majority confuses "'what a trial court *must* do'" before it orders an action under one statutory

---

[6] At oral argument before the Court of Appeals, the County aptly observed, "There is the possibility, though it is vanishingly unlikely, that somebody . . . will adopt even a dangerous dog." Wash. Ct. of Appeals oral arg., *State v. Richards*, No. 56949-3-II (Sept. 15, 2023), 10 min., 51 sec. to 14 min., 58 sec., *video recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org/video/division-2-court-of-appeals-2023091076/?eventID=2023091076

11

procedure "'with what it *may* do'" to incentivize that same action through a suspended sentence condition. *Deskins*, 180 Wn.2d at 79 (quoting *State v. Deskins*, noted at 170 Wn. App. 1021, 2012 WL 3861275, at *7, 2012 Wash. App. LEXIS 2079, at *19). This collapses unrelated civil and criminal code provisions and is contrary to long-standing precedent. As we noted in *Olsen*, "[a] sentencing court has great discretion to impose conditions" to ensure that a suspended sentence "'serves as a period of genuine rehabilitation and that the community is not harmed'" by the convicted person (or her dangerous dog) "'being at large.'" 89 Wn.2d at 128 (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 875, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987)).

## CONCLUSION

The district court acted within its statutory authority to fashion a misdemeanor sentence by offering Richards the option to have her jail time suspended on the condition that she surrender her dangerous dog to the Humane Society of Cowlitz County. This condition did not constitute an order of forfeiture, and it did not contradict animal control code provisions pertaining to civil impoundment and destruction of animals. I would reverse that portion of the Court of Appeals opinion invalidating the sentencing condition and affirm Richards's conviction and sentence.

_____
Stephens, J.

_____
Madsen, J.

APPENDIX


| District Court of Washington for Wahkiakum County | No. CMPLNT 1513 |
|---|---|
| STATE OF WASHINGTON, Plaintiff, vs. JENNIFER A. RICHARDS, Defendant. | Judgment and Sentence (JS) |
| | [ ] Clerk's Action Required: DOL notice |

The defendant pled guilty, or pled not guilty and the verdict of the jury was guilty, or the finding of the court was guilty of:

| Count | Crime | RCW or Ordinance (with subsection) |
|---|---|---|
| 1. | Fail to Enclose/Restrain Dangerous Dog | RCWC 16.08.050(f) |
| 2. | | |
| 3. | | |
| 4. | | |

**GV** [ ] In count(s) _____, **domestic violence – intimate partner** as defined in RCW 9A.36.041 and RCW 26.50.010(7) was pled and proved.

**GV** [ ] In count(s) _____, **domestic violence – family or household member** as defined in RCW 26.50.010(6) was pled and proved.

Therefore, the defendant is adjudged guilty and sentenced as follows:

Sentence is suspended (susp.)/deferred (def.) for __24__ months/years on the following conditions:

Count 1) _364_ days of jail, susp./def. _Ø*_ days; and a fine of $ _see below_

Count 2)_____ days of jail, susp./def. _____ days; and a fine of $_____

Count 3)_____ days of jail, susp./def. _____ days; and a fine of $_____

Count 4)_____ days of jail, susp./def. _____ days; and a fine of $_____

Serve a total of _____ days in jail with credit for _____ days served, and serve a total of _____ days of ☐ electronic monitoring ☐ home detention/electronic monitoring with credit for _____ days served.

[X] Other alternative means of confinement _Defendant shall not be required to go into custody if she provides written proof that the dog that has been surrendered to_

Jail sentences are concurrent/consecutive with all other commitments _the Civil Humane Society, by 9/24 at 3:0 p.m._

[ ] This crime is an offense which requires sex or kidnapping offender registration, or is one of the following offenses, assault in the fourth degree domestic violence, assault in the fourth degree with sexual motivation, communication with a minor for immoral purposes, custodial sexual misconduct in the second degree, failure to register, harassment, patronizing a prostitute, sexual misconduct with a minor in the second degree, stalking, indecent exposure, or violation of a sexual assault protection order granted under chapter 7.90 RCW, or comparable ordinance. Therefore, the defendant shall have a biological sample collected for purposes of DNA identification analysis. This paragraph does not apply if it is established that the Washington State Patrol crime laboratory already has a sample from defendant for a qualifying offense. RCW 43.43.754.

[ ] Report to Wahkiakum County Sheriff's Office by _____ (date/ time) to give a biological sample. Failure to give a biological sample is a gross misdemeanor.

[ ] Possess no firearms until your firearm rights are restored by the court.

[X] NOTIFY COURT OF ANY CHANGE OF ADDRESS.

*Judgment and Sentence Form (JS) - Page 1 of 3*
*For crimes charged on or after 07/28/2019*
*CrRLJ 07.0110 (07/2019) CrRLJ 7.2, 7.3*

[X] The defendant is indigent as defined in RCW 10.101.010(3)(a) – (c).

Defendant shall pay to the clerk of this court:

| | | | | |
|---|---|---|---|---|
| [ ] fine/assessments/fees | $_____ | [ ] criminal traffic fee | $ 102.50 M | |
| [ ] costs | $_____ | [ ] probation/monitoring fee | See Below | |
| [ ] bench warrant fee | $_____ | [ ] public defender recoupment | $_____ | |
| [ ] jail recoupment fee | $_____ | [ ] DPO Assessment for DV conviction | $ 15.00 | |
| [ ] DNA fee | $ 100.00 M | [ ] domestic violence assessment | $ 100.00 | |

[ ] Waived. DNA previously collected.
[ ] Indecent Exp/Prost. $ 16.50 M
[ ] restitution of $_____ * (set by separate order.)
[ ] restitution to be left open for _____ days.

[ ] other: _____ $_____
Court Security Restitution [ ] $25.00* [X] $50.00*

**Total:** $50.00

Financial obligations are due and payable immediately unless the court has set a payment schedule. Community service can be done for everything other than restitution. Items marked * must be paid.

[X] Pay total financial obligations at $ in total per month starting in by 10/15/21.

[ ] The defendant is ordered to reimburse the court for the cost of pretrial electronic monitoring in the amount of $_____.

**Additional Conditions of Sentence:**

[X] No criminal violations of law or alcohol related infractions. No animal related infractions or violations of law.

[ ] Not drive a motor vehicle without a valid license and proof of insurance.

[ ] Install an Ignition Interlock Device, have it on any car you drive and do not drive without one for _____.

[ ] Supervised probation for _____ months. Meet with probation officer as directed. Sign and follow all rules of probation. Pay a $_____ monthly probation fee which includes $10/month court security assessment.

[ ] No possession/consumption of alcohol, marijuana, or nonprescribed controlled drugs. A marijuana card IS NOT a prescription.

[ ] Do not go to establishments where alcohol and/or marijuana is the chief item of sale (such as bars, taverns, breweries, retail outlets).

[ ] Submit to urinalysis, breathalyzer & other physiological testing on request of Law Enforcement, Probation Officer or Treatment Provider.

[ ] Submit to & pay for SCRAM monitoring system for _____. Provide proof of SCRAM installation by _____.

[ ] Obtain [ ] an alcohol/drug evaluation from a Washington State-approved agency [ ] a psycho-sexual evaluation from a state certified provider [ ] a mental health evaluation from a state licensed mental health provider [ ] a certified domestic violence intervention program and file a copy of the evaluation within _____ days. Begin any recommended treatment or education within_____ days and file proof of timely enrollment and completion. Sign all releases of information. [ ] Evaluation already on file.

[ ] Begin the following within _____ days and complete within _____ months, and file proof of timely enrollment and completion: [ ] DUI Victim's Panel [ ] Alcohol/Drug Information School

[ ] Do not go upon the property of and have no contact with _____

_____.

[ ] Complete _____ hours of community service by _____ and provide proof to court.

[X] Other: In the event Defendant provides proof of surrender of Thor by 9/29/21 at 3:00 pm, she need not be taken into custody and jail time shall be re-suspended. If she fails to provide such proof to District Court by 3:00 pm on 9/29/21, she shall report to custody and remain in custody until she provides such proof.

Judgment and Sentence Form (JS) - Page 2 of 3
For crimes charged on or after 07/28/2019
CrRLJ 07.0110 (07/2019) CrRLJ 7.2, 7.3

[ ] **This crime involves a sex offense, or a kidnapping offense involving a minor, as defined in RCW 9A.44.130.** The defendant is required to register with the county sheriff as described in the "Offender Registration" Attachment.

[ ] **Department of Licensing Notice – Violation of RCW 9.41.270.**
Count _____ is (a) a violation of RCW 9.41.270 (unlawful carrying or handling of weapons), a gross misdemeanor for which the penalty includes loss of the defendant's concealed pistol license, if any.
**Clerk's Action** –The clerk shall forward a Notice of Revocation of Concealed Pistol License to DOL.

[ ] **Department of Licensing Notice – Defendant under age 21 only.**
Count _____ is (a) a violation of RCW chapter 69.41 [Legend drug], 69.50 [VUCSA], or 69.52 [Imitation drugs], and the defendant was under 21 years of age at the time of the offense **OR** (b) a violation under RCW 9.41.040 (unlawful possession of firearm), and the defendant was under the age of 18 at the time of the offense **OR** (c) a violation under RCW chapter 66.44 [Alcohol], and the defendant was under the age of 18 at the time of the offense **AND** the court finds that the defendant previously committed an offense while armed with a firearm, an unlawful possession of a firearm offense, or an offense in violation of chapter 66.44, 69.41, 69.50, or 69.52 RCW.
**Clerk's Action** –The clerk shall forward an Abstract of Court Record (ACR) to the DOL, which must revoke the Defendant's driver's license. RCW 46.20.265.

[ ] Return for a review hearing: _____.

[ ] Bail or Bond is [ ] Exonerated [ ] Forfeited.

**I have read the rights, conditions and warnings.**

Dated: 9/28/21

| | |
|---|---|
| **Defendant's Signature** | **Date of Birth** 4-7-79 |

**Judge/Commissioner/Pro Tem**

**Prosecuting Attorney**     **WSBA No.** 27227

_____
**Defense Attorney**     **WSBA No.**
[ ] Written Waiver of Counsel is filed.

Defendant's Address and Telephone

*Judgment and Sentence Form (JS) - Page 3 of 3*
*For crimes charged on or after 07/28/2019*
*CrRLJ 07.0110 (07/2019) CrRLJ 7.2, 7.3*